**TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, Petitioner,**

v.

**Jeff A. STURROCK, Respondent.**

No. 02–0069.

Supreme Court of Texas.

Argued April 16, 2003.

Decided Aug. 27, 2004.

Rehearing Denied Nov. 5, 2004.

---

Jay Thompson, Thompson, Coe, Cousins, & Irons, L.L.P., Dallas, for amicus curiae, National Association of Indepe.

Sarah C. Wells, Asst. Atty. Gen., Austin, for amicus curiae, Texas Department of Insurance.

Amy Douthitt Maddux, Tynan Buthod, Baker Botts, L.L.P., Houston, for petitioner.

Sid S. Stover, Seale Stover Bisbey & Morian, Jasper, for respondent.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice JEFFERSON, Justice SCHNEIDER and Justice SMITH joined.

In this case, an insured was injured when his foot became entangled with his truck's raised door facing while he was exiting the vehicle. We must decide whether his injury resulted from a "motor vehicle accident" for purposes of personal

injury protection (PIP) coverage under his Texas standard automobile insurance policy. We hold that a "motor vehicle accident" occurs when (1) one or more vehicles are involved with another vehicle, an object, or a person, (2) the vehicle is being used, including exit and entry, as a motor vehicle, and (3) a causal connection exists between the vehicle's use and the injury-producing event. We conclude that the insured's injury here resulted from a "motor vehicle accident" within his policy's PIP coverage. Accordingly, we affirm the court of appeals' judgment.

## I

Jeff Sturrock drove his truck to work, parked, and turned off the engine. While exiting the truck, he entangled his left foot on the raised portion of the truck's door facing. Sturrock injured his neck and shoulder in his attempt to prevent himself from falling from the vehicle. Sturrock filed a claim for PIP benefits under his vehicle's insurance policy, issued by Texas Farm Bureau.

■ The Texas Insurance Code requires that every automobile insurance policy issued within Texas provide PIP coverage, unless rejected by the insured. *See* Tex. Ins.Code art. 5.06–3(a). It is the public policy of Texas to provide injured occupants of the insured vehicle PIP benefits, up to the statutory maximum of $2,500, without regard to fault or nonfault of the insured. *See id.* art. 5.06–3(b), (c);

*Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 308 (Tex.1978). Sturrock's policy provides, in pertinent part:

A. We will pay Personal Injury Protection benefits because of bodily injury:

1. resulting from a *motor vehicle accident;* and

2. sustained by a covered person.

(Emphasis added). Texas Farm Bureau does not dispute that Sturrock is a "covered person" under the policy, but denies that Sturrock's injuries resulted from a "motor vehicle accident" within the policy's PIP coverage.

Sturrock sued Texas Farm Bureau for breach of contract and violations of Article 21.21 of the Texas Insurance Code. Both parties filed motions for summary judgment. The parties then filed an "greed Statement of Facts, pursuant to Texas Rule of Civil Procedure 263,[1] and asked the trial court 'to apply the law to these agreed facts and determine whether Sturrock's injuries resulted from 'a motor vehicle accident' within the meaning of the policy." The trial court held that, as a matter of law, Sturrock's injuries resulted from a "motor vehicle accident" covered by the policy's PIP provisions, and the court of appeals affirmed. 65 S.W.3d 763. We granted review to determine whether Sturrock's injuries resulted from a "motor vehicle accident" within the policy's PIP coverage.[2]

---

1. Texas Rule of Civil Procedure 263, entitled "Agreed Case," provides:

Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause.

2. Texas Farm Bureau argues that Sturrock is bound by his response to a Request for Admissions that "I was not involved in a 'motor vehicle accident,' but I was involved in an accident involving a motor vehicle." However, the Agreed Statement of Facts submitted to the trial court did not mention Sturrock's admission; rather, the parties stipulated that the Agreed Statement included "all the ultimate facts essential for determination of the claim" and that "[n]o other facts are relevant

## II

We construe insurance policies in Texas according to the rules governing contract construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003); *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999). If policy language can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and we construe it as a matter of law. *Schaefer*, 124 S.W.3d at 157; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Whether a contract is ambiguous is itself a question of law. *Schaefer*, 124 S.W.3d at 157; *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). An ambiguity does not arise simply because the parties offer conflicting interpretations of the policy language. *Schaefer*, 124 S.W.3d at 157; *Kelley–Coppedge*, 980 S.W.2d at 464. Rather, an ambiguity exists only if the contract is susceptible to two or more reasonable interpretations. *Schaefer*, 124 S.W.3d at 157; *Kelley–Coppedge*, 980 S.W.2d at 464.

Neither party contends that the term "motor vehicle accident" is ambiguous, although each asserts a different interpretation. We have held that the term "auto accident"[3] is not ambiguous. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex.1997); *see also Aetna Life & Cas. v. Fed. Ins. Co.*, No. CIV. A.96–5995, 1997 WL 746189, at *4 (E.D.Pa. Nov.26, 1997) (finding the term "auto accident" unambiguous despite parties' differing interpretations of the term); *Tyrrell v. Farmers Ins. Co. of Wash.*, 140 Wash.2d 129, 994 P.2d 833, 837–38 (2000) (en banc) (concluding that term "motor vehicle accident" is not ambiguous); *Jordan v. United Equitable Life Ins. Co.*, 486 S.W.2d 664, 667 (Mo.Ct.App.1972) (finding that the words "automobile accident" are not ambiguous and should be given their ordinary meaning). Accordingly, we construe the term "motor vehicle accident" as a matter of law.

## III

Citing our decision in *Griffin*, Texas Farm Bureau argues that accidents like the one Sturrock experienced do not fit within the plain meaning of "motor vehicle accident" because the term requires some involvement between the covered motor vehicle and *another* vehicle, person, or object. *Griffin*, 955 S.W.2d at 83. Because Sturrock's accident did not involve another vehicle or person, Texas Farm Bureau contends, Sturrock's injuries did not result from a "motor vehicle accident." Conversely, Sturrock claims this Court has determined that a "motor vehicle accident" does not require a collision, and the incident at hand was a "motor vehicle accident" because the vehicle itself produced the injury.

As the parties' contentions indicate, this is not the first time we have examined the meaning of the term "motor vehicle accident" in a personal automobile liability insurance policy. In *Griffin*, an insured, James Royal, III, drove his vehicle while two passengers fired shots that hit and

to the disposition of this claim." Rule 263 states that an Agreed Statement of Facts and the judgment constitute the record for the case. Tex.R. Civ. P. 263. Accordingly, we look to those sources to determine the question presented.

**3.** In this context, the terms "auto accident," "automobile accident," and "motor vehicle accident" are interchangeable, as the parties assume. *See also* Tex. Dep't of Ins. Commissioner's Bulletin, No. B–0004–01 (Feb. 5, 2001) (stating that "auto policies and endorsements referring to 'an accident,' 'the accident,' 'motor vehicle accident,' or 'auto accident' mean the same as if the word 'occurrence' were substituted for the word 'accident.' ").

injured Griffin as he walked down the street. Royal's policy covered damages for which its insured became legally responsible "because of an auto accident." We stated that " '[t]he term "auto accident" refers to situations where one or more vehicles are involved with another vehicle, object, or person.' " *Id.* (quoting *State Farm Mut. Ins. Co. v. Peck*, 900 S.W.2d 910, 913 (Tex.App.-Amarillo 1995, no writ)). With this definition in mind, we held that State Farm had no duty to defend or indemnify its insured because "a drive-by-shooting [could not be transformed] into an 'auto accident' " under the policy. *Id.* at 84. Although this was the extent of our analysis, we relied on the court of appeals' decision in *Peck*, which reasoned that an accident is not an "auto accident" just because it takes place in or near an automobile; instead, "the automobile must, in some manner, be involved in the accident." *Peck*, 900 S.W.2d at 913.

We most recently addressed the meaning of the term "automobile accident" in *Mid–Century Insurance Co. of Texas v. Lindsey*, 997 S.W.2d 153 (Tex.1999). There, Lindsey, a passenger in his mother's car, was shot by a gun that accidentally discharged from an adjacent truck when a boy attempted to enter the cab through the rear window. Lindsey filed a claim under the uninsured/underinsured motorists (UM/UIM) provision of his mother's policy, which covered injuries resulting from "an accident" that "arise[s] out of the . . . use of the uninsured [or underinsured] motor vehicle." *Id.* at 155. Mid–Century denied the claim, arguing that under the policy the term "accident" meant "auto accident," as evidenced by the latter phrase's use throughout the policy—a more restrictive term than an accident that merely "arises out of" a vehicle's use. An "auto accident," Mid–Century claimed, requires a collision. We accepted the first part of Mid–Century's argument for pur-

poses of our holding, but disagreed that the term "auto accident" required a collision or excluded occurrences like Lindsey's:

> Assuming that "auto accident" is a more restrictive term in the policy than "accident", and that a fair construction of the policy as a whole requires that the restriction be implied in the uninsured/underinsured motorist provision where it does not appear, we do not agree that the term excludes the occurrence here. . . . Nothing in [*Griffin* or *Peck*] suggests that an "auto accident" requires a collision. . . .

*Id.* at 155–56. We agreed with the trial court and the court of appeals that Lindsey's injury was caused by an "auto accident" under the policy. *Id.* at 156.

Recognizing that our holding in *Lindsey* would appear to support coverage for Sturrock's injuries, Texas Farm Bureau seeks to distinguish this case in three respects. First, Texas Farm Bureau argues that we should reject the above-quoted language as dicta. The dissenting justices similarly try to avoid *Lindsey's* holding by stating that our discussion regarding the requirement of an "auto accident" was not the primary focus of the case and declaring that the discussion was not necessary to our decision. 146 S.W.3d at 136–37 (Owen, J., dissenting). While the dissent is correct that two separate issues were raised in *Lindsey*—namely whether there was an accident and, if so, whether the accident arose from the use of the vehicle—that the first issue did not receive the majority of our attention does not make it any less essential to the holding. We expressly premised our holding in *Lindsey* on the assumption that the policy required an "auto accident." *Lindsey*, 997 S.W.2d at 155–56. Thus, we did not simply determine that an accident had occurred, and our statement cannot be disregarded as

dicta. *See Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001) (holding that the court's discussion of "motor-driven equipment" in *Schaefer v. City of San Antonio*, 838 S.W.2d 688, 693 (Tex.App.-San Antonio 1992, no writ), could not be disregarded as dicta because the court relied on the discussion to support its ultimate conclusion). We also note that the agency entrusted with promulgating and enforcing standard and uniform insurance policies, *amicus curiae* Texas Department of Insurance, agrees that *Lindsey* is indistinguishable and governs this case.[4]

Second, Texas Farm Bureau notes that *Lindsey* involved UM/UIM coverage, whereas the current dispute involves PIP coverage. But courts interpret both UM/UIM and PIP insurance provisions broadly, and our discussion of the term "auto accident" in *Lindsey* remains applicable to our analysis of the term "motor vehicle accident" in this case. *See Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex.1989) (holding that UM/UIM coverage "is to be construed liberally to give full effect to the public policy which led to its enactment"); *Unigard Sec. Ins. Co.*, 572 S.W.2d at 308 (noting that it is the public policy of the State that automobile policies include PIP benefits without regard to fault); *Ortiz v. State Farm Mut. Auto. Ins. Co.*, 955 S.W.2d 353, 356–57 (Tex.App.-San Antonio 1997, pet. denied) (stating that courts must interpret the UM/UIM and PIP coverage provisions broadly to give full effect to "the state's interest in protecting conscientious and thoughtful motorists from financial loss"); *see also Putkamer v. Transamerica Ins. Corp. of Am.*, 454 Mich. 626, 563 N.W.2d 683, 686 (1997) ("The no-fault act is remedial in nature and is to be liberally construed in favor of the persons who are intended to benefit from it."); 8D Appleman on Insurance Law & Practice § 5171.55 (2003 Supp.) ("The terms [of no-fault and personal injury protection] are construed liberally to extend coverage broadly."). Additionally, we note that the Texas Department of Insurance does not contend that the meaning of "motor vehicle accident" varies from one insurance provision to another and urges the Court to find PIP coverage in this case. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex.1998) (recognizing that the Texas Department of Insurance's "expertise in the insurance trade is unquestionable").

Third, Texas Farm Bureau insists that Sturrock's injuries did not result from a "motor vehicle accident" because the accident did not involve "*another* vehicle, object, or person," as *Griffin* and *Lindsey* require. According to Texas Farm Bureau, an insured who is injured by his own vehicle is not involved in a "motor vehicle accident." In its *amicus* brief, the Texas Department of Insurance urges the Court to reject Texas Farm Bureau's argument, asserting that it posits an absurd interpre-

---

4. The Attorney General's *amicus* brief, filed on the Texas Department of Insurance's behalf, states:

[Texas Farm Bureau] unsuccessfully attempt[s] to distinguish *Lindsey* on the grounds that [Sturrock's] policy does not contain language like the policy in *Lindsey*, which required the injuries to "arise out of" the "use of a motor vehicle." ... This Court, however, addressed that language only after first concluding that there was an "accident" within the definition of "motor vehicle accident." And it is the "accident" analysis in *Lindsey* that is material to this case. *Lindsey* is not rendered inapposite simply because [Sturrock] need not shoulder the additional burden of demonstrating that his injuries "arise out of the use" of the vehicle—though obviously they did. Even under *Lindsey's* definition of "motor vehicle accident," PIP coverage exists for [Sturrock's] claim. (Citation omitted).

tation which, if accepted, would result in greater coverage for passengers than for actual premium-paying insureds.

Admittedly, our statement in both *Lindsey* and *Griffin*, that the term "auto accident" refers to instances "where one or more vehicles are involved with *another* vehicle, object, or person," is grammatically confusing. *Lindsey*, 997 S.W.2d at 155 (emphasis added); *Griffin*, 955 S.W.2d at 83 (emphasis added). There can be "another vehicle" because the definition first speaks of a vehicle or vehicles. But there cannot be "another object" or "another person" unless there is a first object or person. Because we did not reference a first object or person when interpreting the term, "another" can only modify the word vehicle. Thus, the definition refers to accidents where one or more vehicles are involved with *another* vehicle, *an* object, or *a* person.[5] That Sturrock was injured by his own vehicle does not itself preclude coverage under his policy's PIP provisions.

We agree with the Texas Department of Insurance that Texas Farm Bureau's cramped interpretation of our holding in *Griffin* and *Lindsey* would severely limit an insured's no-fault coverage in a manner that would contravene its purpose and lead to absurd results. Under Texas Farm Bureau's formulation, a passenger who fell from Sturrock's truck in the same way would be covered, but Sturrock himself would not. Sturrock would be covered if he had fallen out of his car onto another person, but not if he had fallen directly onto the ground. He would be covered if a tire dislodged from another vehicle and hit his car, but not if his own tire blew out and caused his vehicle to roll over. Sturrock would be covered if he were run over by a vehicle with a faulty parking brake, but not if his own vehicle ran over him because of the same defect. Neither the policy's language nor its context indicates a construction that would deny no-fault benefits to insureds who suffer injuries caused by their own covered vehicles.

■ This is not to say, however, that any accident involving another vehicle, an object, or a person constitutes a "motor vehicle accident."[6] While a collision or near collision is not required,[7] the vehicle must be more than the mere situs of the accident or injury-producing event. *See, e.g., Lindsey*, 997 S.W.2d at 156; *Peck*, 900 S.W.2d at 913. Rather, "the automobile must, in some manner, be involved in the

---

5. The origin of the language we used in *Griffin* supports this interpretation. The language originated in *Farmers Insurance Co. of Washington v. Grelis*, 43 Wash.App. 475, 718 P.2d 812, 813 (1986), in which the court stated that the " 'words [motor vehicle accident] evoke an image of one or more vehicles in forceful contact with another vehicle or *a person* causing physical injury.' " *Id.* (emphasis added) (quoting *Manhattan & Bronx Surface Transit Operating Auth. v. Gholson*, 98 Misc.2d 657, 414 N.Y.S.2d 489, 490 (Spec. Term 1979), *aff'd*, 71 A.D.2d 1004, 420 N.Y.S.2d 298 (N.Y.App.Div.1979)).

6. To the extent *Berry v. Dairyland County Mutual Insurance Co. of Texas*, 534 S.W.2d 428 (Tex.Civ.App.-Fort Worth 1976, no writ), is

inconsistent with our holding today, we disapprove it.

7. We recognize that the *Griffin* definition was derived from *Peck*, 900 S.W.2d at 913, which did require a vehicle's involvement "in some type of collision or near collision." However, our decisions in *Griffin* and *Lindsey* firmly establish that no such requirement exists. We further note that the Texas Department of Insurance, the agency entrusted with promulgating and enforcing standard and uniform insurance policies, recognizes that the term "motor vehicle accident" is not limited to a collision unless explicitly stated in the policy. Tex. Dep't of Ins. Commissioner's Bulletin, No. B-0004-01 (Feb. 5, 2001).

accident." [8]

Texas Farm Bureau contends that Sturrock's policy contains more restrictive language than the broader policy language found in *Lindsey*, which merely required that the injuries "arise out of" the "use of a motor vehicle." *Lindsey*, 997 S.W.2d at 156. According to Texas Farm Bureau, the court of appeals' conclusion that Sturrock's injuries resulted from a "motor vehicle accident" erroneously incorporates a broader "arising out of use" concept that does not appear in the more restrictive PIP language. The parties here did not contract for coverage of any accident that might arise out of a motor vehicle's use, Texas Farm Bureau contends, but only for coverage in the event of a "motor vehicle accident." In *Lindsey*, however, we examined the "arising out of use" language only after first construing the term "auto accident." *Id.* at 155–56. As discussed earlier, we concluded that the incident in question satisfied our construction of that term. *Id.* at 156. *Lindsey's* discussion of the term "auto accident" is not rendered inapposite because we continued to discuss additional policy language.

Moreover, that the term "motor vehicle accident" might connote a more restrictive

---

**8.** *Peck,* 900 S.W.2d at 913 (denying PIP coverage because "the only nexus between the accident and the vehicle was the fact that Salazar was sitting in the vehicle when he got bit [by the dog]"); *see also State Farm Mut. Auto. Ins. Co. v. Barth,* 579 So.2d 154, 156 (Fla.Dist.Ct.App.1991) ("[I]n order for a loss to 'arise out of' the use of a motor vehicle, for the purpose of determining whether personal injury protection coverage exists, 'some nexus' between the vehicle and the injury is all that is required."); *Gov't Employees Ins. Co. v. MFA Mut. Ins. Co.,* 802 P.2d 1122, 1124 (Colo.Ct.App.1990) ("A 'but-for' test is to be applied in determining whether this requisite causal relationship exists between the injury and the use of an insured vehicle."); *Gray v. Allstate Ins. Co.,* 668 A.2d 778, 780 (Del.Super.Ct.1995) (to constitute an "accident involving a motor vehicle" and thus qualify for PIP coverage, a causal connection is required between the use of the vehicle and the injury); *Allied Mut. Ins. Co. v. Patrick,* 16 Kan. App.2d 26, 819 P.2d 1233, 1236 (1991) (holding that "there must be some causal connection between the accident and the automobile allegedly involved" for coverage to exist); *Putkamer,* 563 N.W.2d at 687 (finding that Michigan's no-fault statute required the injury to be causally related to claimant's use of the parked motor vehicle); *Shinabarger v. Citizens Mut. Ins. Co.,* 90 Mich.App. 307, 282 N.W.2d 301, 305 (1979) ("[C]ases construing the phrase 'arising out of the use of a motor vehicle' uniformly require that the injured person establish a causal connection between the use of the motor vehicle and the injury."); *Cont'l W. Ins. Co. v. Klug,* 415 N.W.2d 876, 878 (Minn.1987) (setting forth factors to consider in determining whether accident arises out of use or maintenance of automobile, including extent of causation between automobile and injury); *Jordan,* 486 S.W.2d at 667 (explaining that the "automobile must, in some manner, be involved in the accident"); *Lebroke v. United States Fid. & Guar. Ins. Co.,* 146 N.H. 249, 769 A.2d 392, 394 (2001) (citing *Peck* with approval for the proposition that an auto accident requires, at the very least, the involvement of the automobile); *Schweitzer v. Aetna Life & Cas. Co.,* 306 Pa.Super. 300, 452 A.2d 735 (1982) ("[T]here must be some connection, more than mere chance or happenstance, between the injuries sustained and the insured vehicle."); *Schulz v. State Farm Mut. Auto. Ins. Co.,* 930 S.W.2d 872, 875 (Tex.App.-Houston [1st Dist.] 1996, no writ) (explaining that mere fact that vehicle was involved is not sufficient; rather, claimant must show that injuries resulted from a motor vehicle accident); *Tyrrell,* 994 P.2d at 838 (holding that "the sensible and popular understanding of what a 'motor vehicle accident' entails necessarily involves the motor vehicle *being operated as a motor vehicle*"); 8 Russ & Segalla, Couch on Insurance 3d § 119:5 (1997) ("[T]he automobile must, in some manner, be involved in the accident. . . ."); 4 Long, The Law of Liability Insurance § 28.05(1), at 29 (1991) ("Under any reasonable interpretation of statutory or policy language there must be a nexus or causal connection between the motor vehicle and the injuries sustained in order for no-fault coverage to attach.").

meaning than the phrase "arising out of a motor vehicle's use" does not mean that we cannot consider the manner in which the vehicle caused Sturrock's injuries, or that considering the vehicle's involvement necessarily expands coverage. Considering the vehicle's causative role in the injury-producing accident comports with the Legislature's statutory scheme. Article 5.06–3 of the Texas Insurance Code provides:

(a) No automobile liability insurance policy ... covering liability *arising out of the ... use of any motor vehicle* shall be delivered or issued for delivery in this state unless personal injury protection coverage is provided therein or supplemental thereto.

(b) "Personal injury protection" consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy ... up to an amount of $2,500 for each such person for payment of all reasonable expenses arising from *the accident* ....

Tex. Ins.Code art. 5.06–3 (emphasis added). "The accident" for which PIP payments are statutorily required refers to subsection (a)'s liability "arising out of the ... use of any motor vehicle." Other jurisdictions' no-fault statutes also speak in terms of accidents resulting from or arising out of the vehicle's use.[9]

Therefore, while the court of appeals conflated *Lindsey's* discussion of two separate policy terms, 65 S.W.3d at 766–67, its approach comports with the mandatory statutory provisions for PIP coverage. The court's consideration of the vehicle's involvement in Sturrock's accident did not expand coverage beyond the policy's language and is consistent with Texas case law and decisions from other jurisdictions. *See* cases cited *supra* note 8.

We find it significant that courts across the nation have found no-fault coverage to exist in similar circumstances. Generally, if a claimant sustains injuries from a slip-and-fall accident while entering into or alighting from the covered vehicle, the courts are consistent in holding there is coverage.[10] Similarly, if a collision with

---

**9.** *See, e.g., Trinity Universal Ins. Co. v. Hall,* 690 P.2d 227, 229 (Colo.1984) (en banc); *Blish v. Atlanta Cas. Co.,* 736 So.2d 1151, 1153 (Fla.1999); *State Farm Mut. Auto. Ins. Co. v. Canady,* 143 Ga.App. 546, 239 S.E.2d 152, 153 (1977); *Ky. Farm Bureau Mut. Ins. Co. v. Hall,* 807 S.W.2d 954, 955 (Ky.Ct.App. 1991); *Putkamer,* 563 N.W.2d at 686–87; *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.,* 277 N.W.2d 648, 651 (Minn.1979); *Ohio Cas. Group of Ins. Cos. v. Gray,* 323 N.J.Super. 338, 732 A.2d 1145, 1146 (Ct.App. Div.1999); *Hill v. Metro. Suburban Bus Auth.,* 157 A.D.2d 93, 555 N.Y.S.2d 803, 806 (App. Div.1990); *State Farm Mut. Auto. Ins. Co. v. Estate of Gabel,* 539 N.W.2d 290, 292 (N.D. 1995); *Schweitzer,* 452 A.2d at 736–37; 4 Long, The Law of Liability Insurance § 28.05(1), at 26 (1991) ("The typical policy requires that the accident involve the occupancy, operation, maintenance, or use of the vehicle in order to fall within the policy coverage."). We note that the uniformity in language likely results from the widespread adoption of the language from the Uniform Motor Vehicle Accident Reparations Act. *See* Uniform Motor Vehicle Accident Reparations Act § 1, 14 U.L.A. 41 (1995); *see also Estate of Gabel,* 539 N.W.2d at 293 (quoting *St. Paul Mercury Ins. Co. v. Andrews,* 321 N.W.2d 483, 487 (N.D.1982)) (" 'Unless one believes in a miraculous coincidence in choice of words or widespread plagiarism, it is difficult to escape the conclusion that North Dakota and many other jurisdictions have enacted parts of the [Uniform Act]....' ").

**10.** *See Walker v. M & G Convoy, Inc.,* No. CIV.A. 88C–DE–191, 1989 WL 158511, at *1 (Del.Super.Ct. Nov.2, 1989) (concluding that claimant who slipped and fell on ice while securing cars on his employer's car trailer was an occupier of the vehicle and therefore entitled to PIP coverage); *Padron v. Long Island Ins. Co.,* 356 So.2d 1337, 1339 (Fla. Dist.Ct.App.1978) (concluding that injuries

another vehicle occurs while the claimant is entering into or alighting from the covered vehicle, courts find coverage.[11] However, courts generally deny coverage for injuries sustained from slip-and-fall accidents and collisions occurring prior to the process of entering or after exiting.[12]

sustained by motorist whose left foot slid as he stepped out of car on driver's side, causing right leg to hit bottom part of car door, thereby breaking leg, was bodily injury arising out of use of motor vehicle for which motorist was entitled to PIP benefits); *Putkamer*, 563 N.W.2d at 688 (concluding that injuries sustained when person slipped on ice while entering car were covered by statutory scheme for PIP coverage); *Haagenson*, 277 N.W.2d at 652 (upholding jury verdict that no-fault provisions covered claimant's injuries suffered while entering motor vehicle); *Hill*, 555 N.Y.S.2d at 805–06 (concluding that injuries suffered when a claimant caught her arm in the bus door and then tripped on a nail or tile on the floor were covered by no-fault scheme); *Berry*, 534 S.W.2d at 432–33 (concluding PIP coverage existed for injuries sustained when claimant snapped the cartilage in his knee while exiting car); *S. Surety Co. v. Davidson*, 280 S.W. 336, 337 (Tex.Civ.App.-Fort Worth 1926, no writ) (concluding that coverage existed for injuries sustained when claimant stepped on a brick while exiting the car); *cf. Parker v. Atlanta Cas. Co.* 157 Ga. App. 539, 278 S.E.2d 119, 120 (1981) (finding that PIP coverage was not available when claimant stepped on grease when alighting from car only because policy excluded conduct within the course of business of repairing or servicing vehicles unless conduct also involved "actual operation of a motor vehicle as a vehicle on business premises").

**11.** *See Allstate Ins. Co. v. Howe*, 31 Conn.App. 132, 623 A.2d 1031, 1034 (1993) (finding that UIM coverage existed for injuries sustained when claimant was grasping door handle prior to being struck); *State Farm Mut. Auto. Ins. Co. v. Vaughn*, 253 Ga.App. 217, 558 S.E.2d 769, 771 (2002) (finding that a student was "using" a school bus, and thus was entitled to UM insurance, when she was hit by a vehicle while crossing the road to gain entry to the bus); *Lumbermen's Mut. Cas. Co. v. Norris*, 15 Ill.App.3d 95, 303 N.E.2d 505, 507 (1973) (UM coverage existed for passenger who got off car's fender to avoid oncoming car but was struck nonetheless); *Aucoin v. Lafayette Ins. Co.*, 771 So.2d 95, 100 (La.Ct. App.2000) (UM insurance covered injuries

sustained while leaning against car); *Hunt v. Citizens Ins. Co.*, 183 Mich.App. 660, 455 N.W.2d 384, 386 (1990) (finding that PIP coverage existed for victim of hit-and-run accident since he was in the process of entering the vehicle when hit); *Olsen v. Farm Bureau Ins. Co. of Neb.*, 259 Neb. 329, 609 N.W.2d 664, 671 (2000) (holding that liability insurance covered the injuries sustained when claimant exited car and was struck by a live wire since the claimant was still occupying the vehicle); *Travelers Indem. Co. v. Commercial Union Ins. Cos.*, 368 Pa.Super. 159, 533 A.2d 765, 767–68 (1987) (holding UM policy provider was the proper source of loss benefits for injuries sustained when claimant's car was struck while he was seated in his car with his left foot still on the ground); *Whitmire v. Nationwide Mut. Ins. Co.*, 254 S.C. 184, 174 S.E.2d 391, 395 (1970) (UM coverage existed for injury sustained by insured while running away from parked car after noticing its imminent collision with an oncoming vehicle); *Nat'l Life & Accident Ins. Co. v. Hunter*, 519 S.W.2d 709, 710–11 (Tex.Civ.App.-Beaumont 1975, writ ref'd n.r.e.) (finding that testimony that decedent had not let go of the automobile from which he had emerged permitted the trial court to conclude that insured was a passenger entitled to coverage); *Newman v. Erie Ins. Exch.*, 256 Va. 501, 507 S.E.2d 348, 352 (1998) (finding that a student was "using" a school bus, and thus was entitled to UM insurance, when she was hit by a vehicle while crossing the road to gain entry to the bus).

**12.** *See Chamblee v. State Farm Mut. Auto. Ins. Co.*, 601 So.2d 922, 924 (Ala.1992) (liability coverage denied for injuries to child sustained when child darted into street from median while crossing the street after exiting parked vehicle, as this constituted new activity that was disassociated from the "use" of the vehicle); *Testone v. Allstate Ins. Co.*, 165 Conn. 126, 328 A.2d 686, 690 (1973) (finding that tow truck worker was not entitled to UM coverage since he was two or three feet from vehicle when injured and was therefore not entering the vehicle); *Adamkiewicz v. Milford Diner, Inc.*, No. 90C–JA–23, 1991 WL 35709, at *1 (Del.Super.Ct. Feb.13, 1991) (slip and

Thus, if Sturrock had finished exiting the truck and then fell, or if he had fallen out of the car without any involvement of the vehicle, there would be no coverage. But here, the vehicle's door facing was a causative factor in Sturrock's fall.

The dissenting justices assert that cases interpreting "arising out of" policy language are inapposite when interpreting policy language that requires the injury to result from a "motor vehicle accident." 146 S.W.3d at 139 (Owen, J., dissenting). The dissent then proceeds to provide a litany of cases, with no analysis, which stand for the proposition that not all accidents involving a vehicle in some manner

fall on ice not covered under PIP policy because claimant was merely walking toward vehicle); *State Farm Mut. Auto. Ins. Co. v. Yanes*, 447 So.2d 945, 946 (Fla.Dist.Ct.App. 1984) (finding that UM coverage did not exist because claimant had finished exiting the vehicle and had started new act of walking across the street); *Cole v. N.H. Ins. Co.*, 188 Ga.App. 327, 373 S.E.2d 36, 38 (1988) (claimant who slipped and fell against the car was not covered by no-fault insurance, as she was not "engaged in the 'immediate' act of entering into or alighting from" the vehicle); *Allstate Ins. Co. v. Horn*, 24 Ill.App.3d 583, 321 N.E.2d 285, 291 (1974) (UM coverage denied for claimant who was twenty-four feet away from vehicle he intended to enter when accident occurred); *Crear v. Nat'l Fire & Marine Ins. Co.*, 469 So.2d 329, 336–37 (La.Ct.App. 1985) (UM coverage denied for injuries suffered when claimant was struck while walking through drive through area of post-office parking lot); *Rednour v. Hastings Mut. Ins. Co.*, 468 Mich. 241, 661 N.W.2d 562, 567 (2003) (claimant was not occupying his vehicle when struck by a moving vehicle while walking around his own car to change the tire, and thus was not entitled to PIP coverage); *Block v. Citizens Ins. Co. of Am.*, 111 Mich.App. 106, 314 N.W.2d 536, 538 (1981) (no-fault coverage denied for a slip-and-fall on ice before insured reached vehicle); *Steinfeldt v. AMCO Ins. Co.*, 592 N.W.2d 877, 879–80 (Minn.Ct.App.1999) (injury suffered while attempting to assist victims of a motor vehicle accident on an adjacent road not covered under no-fault provisions); *State Farm Mut.*

are covered by PIP policies with potentially broader language. *See, e.g., Kordell v. Allstate Ins. Co.*, 230 N.J.Super. 505, 554 A.2d 1, 2 (Ct.A.D.1989) (finding no coverage when insured died from a heart attack while stopped at a red light). In citing the above cases we do not mean to suggest that policies covering injuries "arising out of the use" of the vehicle and those covering injuries resulting from "motor vehicle accidents" provide identical coverage; we simply find it notable that, nationwide, states provide no-fault PIP benefits for injuries sustained in similar incidents.

Moreover, our approach comports with other language that appears in Sturrock's

*Auto. Ins. Co. v. Farmers Ins. Co.*, 569 S.W.2d 384, 386 (Mo.Ct.App.1978) (court distinguished entering a vehicle from approaching a vehicle with the intention of entering, concluding that the claimant fell within the latter category); *Ertelt v. EMCASCO Ins. Co.*, 486 N.W.2d 233, 235 (N.D.1992) (claimant's injuries from heart attack suffered twenty feet away from vehicle not covered under no-fault insurance); *Aversano v. Atl. Employers Ins. Co.*, 290 N.J.Super. 570, 676 A.2d 556, 557–58 (Ct.App.Div.1996), *aff'd*, 151 N.J. 490, 701 A.2d 129 (1997) (PIP coverage denied for injuries sustained when claimant fell in a pothole while reaching for his vehicle with keys extended and ready to unlock the door because he had not first made physical contact with the vehicle); *Hurwich v. New York City Transit Auth.*, 69 A.D.2d 883, 415 N.Y.S.2d 693, 693 (N.Y.App.Div.1979) (affirming denial of no-fault benefits because claimant admitted that she was completely off the bus when she fell); *Estate of Jordan v. Colonial Penn Ins. Co.*, 370 Pa.Super. 555, 537 A.2d 14, 18 (1988) (claimant was no longer an "occupant" of vehicle after walking 3/4 of a mile down the highway); *Fulton v. Tex. Farm Bureau Ins. Co.*, 773 S.W.2d 391, 392 (Tex. App.-Dallas 1989, writ denied) (PIP and UM coverage do not extend to a passenger freely walking outside the vehicle at the time of the accident); *Flores v. Dairyland County Mut. Ins. Co. of Tex.*, 595 S.W.2d 893, 894–95 (Tex. Civ.App.-Eastland 1980, writ ref'd n.r.e.) (no recovery under PIP policy for injuries sustained when claimant tripped after taking four steps away from insured vehicle).

policy. Sturrock's PIP coverage extends to injuries that result from a "motor vehicle accident" and that are suffered by a "covered person." The policy defines a "covered person" as "1. You or any family member: a. while occupying; or b. when struck by; a motor vehicle...." The policy defines "occupying" as "in, upon, getting in, on, out or off." We must read the policy as a whole, giving each part effect, "be[ing] particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section," as Texas Farm Bureau would have us do. *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). The policy's language contemplates that a person entering or exiting the covered vehicle is a "covered person" under the policy. Reading the policy's terms to exclude coverage for accidents like Sturrock's, where the vehicle itself caused the injury, would render the definition of "covered person" meaningless, which is contrary to basic rules of contract interpretation.

### IV

■ We hold that a "motor vehicle accident" occurs when (1) one or more vehicles are involved with another vehicle, an object, or a person, (2) the vehicle is being used, including exit or entry, as a motor vehicle, and (3) a causal connection exists between the vehicle's use and the injury-producing event. Here, Sturrock was injured when his left foot became entangled with his car's door facing while he was exiting the vehicle. We conclude that Sturrock's injury resulted from a "motor vehicle accident" within the policy's terms, and affirm the court of appeals' judgment.

Justice OWEN filed a dissenting opinion, in which Justice HECHT, Justice WAINWRIGHT and Justice BRISTER joined.

Justice OWEN, joined by Justice HECHT, Justice WAINWRIGHT, and Justice BRISTER, dissenting.

The average person would not think that tripping over the threshold of a pickup truck's door while exiting is a "motor vehicle accident." Because the Court does not give these words their commonly understood meaning, I respectfully dissent.

### I

This case was submitted to the trial court on stipulated facts. Sturrock had been driving his truck. He stopped the vehicle, parked, and turned off the ignition. The parties' agreed statement of facts says, "Sturrock then turned and opened the door, and as he was exiting the vehicle, his left foot somehow became entangled, and he almost slipped and fell and caught himself, and that is when he felt the burning in his neck and shoulder area. The exiting the vehicle [sic] caused him to do that." In describing the incident further, the agreed statement of facts said, "[h]e hung his foot on the raised portion of the door facing on his truck," "Sturrock somehow injured his neck, shoulder, and upper back as he was getting out of his pick-up," and "Sturrock's injury on April 10 was not caused by an impact between any portion of his body and any portion of his pickup."

The personal injury protection (PIP) provisions of Sturrock's policy say:

A. We will pay Personal Injury Protection benefits because [of] bodily injury:

  1. resulting from a motor vehicle accident; and

  2. sustained by a covered person.

\* \* \*

C. "Covered person" as used in this Part means:

1. You or any family member:
   a. while occupying; or
   b. when struck by;
   a motor vehicle designed for use mainly on public roads or a trailer of any type.
2. Any other person while occupying your covered auto with your permission.

The trial court concluded that Sturrock's injuries were covered. A divided court of appeals affirmed.[1]

There is no dispute that Sturrock is a "covered person." The parties so stipulated. There is no dispute that Sturrock was occupying a motor vehicle at the time of his injury. But coverage under the PIP provisions does not attach simply because an insured was injured "[w]hile occupying" a covered motor vehicle. "[B]odily injury" must "result[ ] from a motor vehicle accident."

This Court had occasion in *Farmers Texas County Mutual Insurance Co. v. Griffin*[2] to construe the term "auto accident." Royal, the insured, was driving a vehicle when his two passengers fired gun shots and wounded Griffin in the leg as he walked down a street. Griffin alleged negligence and gross negligence. The issue was whether Royal's insurer was required to defend or indemnify him.[3] Royal's policy said that the insurer " 'will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.' "[4] Coverage extended to " 'you or any family member for the *ownership, maintenance, or use* of any auto or trailer.' "[5] We held that the term "auto accident" is not ambiguous.[6] Quoting *State Farm Mutual Insurance Co. v. Peck*,[7] we said, " 'The term 'auto accident' refers to situations where one or more vehicles are involved with another vehicle, object, or person.' "[8] We held, "To read Griffin's petition as alleging an 'auto accident' would strain that term beyond any reasonable meaning."[9] Griffin's injuries were not from an auto accident, but from a drive-by shooting, even though the shooter was using a covered vehicle for transportation at the time of the shooting.

The *Peck* decision, cited in *Griffin*, is instructive. Salazar was a passenger in Peck's vehicle while Peck, the insured, was taking her dog from a groomer to a veterinarian. Salazar was sitting in the back seat with the dog when the dog bit him, inflicting severe lacerations to his face.[10] The insurer sought a declaratory judgment that it had no obligation to defend Peck in Salazar's suit against her.[11] The policy provided that the insured " 'will pay damages for bodily injury or property damage for which any covered person becomes le-

---

1. 65 S.W.3d 763.

2. 955 S.W.2d 81 (Tex.1997).

3. *Id.* at 81.

4. *Id.* at 82.

5. *Id.*

6. *Id.* at 83.

7. 900 S.W.2d 910, 913 (Tex.App.-Amarillo 1995, no writ).

8. 955 S.W.2d at 83. We omitted the words "in some type of collision or near collision" from this quote, without indicating the omission. The statement in *Peck* was: "[T]he term 'auto accident' refers to situations where one or more vehicles are involved in some type of collision or near collision with another vehicle, object, or person." 900 S.W.2d at 913.

9. 955 S.W.2d at 83.

10. *Peck*, 900 S.W.2d at 911.

11. *Id.* at 912.

gally responsible because of an *auto accident.*' " [12] The court of appeals held that the term "auto accident" was unambiguous, and that it must apply that term's "ordinary and generally accepted meaning." [13] The court of appeals concluded "that the ordinary and generally accepted meaning of the term 'auto accident' refers to situations where one or more vehicles are involved in some type of collision or near collision with another vehicle, object, or person." [14] It then said, "[f]urthermore, we are persuaded that the automobile must, in some manner, be involved in the accident," and "[t]he mere fact that an accident takes place in or near an automobile does not mean the accident was an 'auto accident.'" [15]

The ordinary, generally accepted meaning of "motor vehicle accident" does not call to mind tripping over the threshold of a vehicle while exiting, notwithstanding a decision from a court of appeals more than thirty years ago, which held that injury had occurred in a motor vehicle accident when an insured with phlebitis in his leg "was favoring it as he twisted in order to get out of the car and as he did so his right knee caught and the cartilage snapped." [16] This Court's decision in *Mid–Century Insurance Co. of Texas v. Lindsey*[17] does not hold otherwise.

The *Lindsey* case construed another section of the Texas standard auto policy, the uninsured/underinsured motorist provision.[18] Lindsey was the insured. He was sitting in a car parked next to Metzer's truck when Metzer's nine-year-old son attempted to climb into the cab of the truck through its sliding rear window and caused a gun on a gun rack mounted over the rear window to discharge. Lindsey was struck by the gunshot. After the $20,000 limits of Metzer's policy were paid, Lindsey sued his insurer under the uninsured/underinsured motorist provisions. The policy provided:

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured [or underinsured] motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured [or underinsured] motor vehicle." [19]

The Court's decision in *Lindsey* primarily focused on the " 'arise out of the ownership, maintenance or use of the . . . motor vehicle' " language.[20] We examined decisions from this [21] and other [22] jurisdictions that had considered the meaning of "arose out of the use of a motor vehicle." We then looked, in particular, at situations in which a gun was involved and whether and under what circumstances the discharge of a firearm "arose out of the use" of a

12.  *Id.* at 911–12.

13.  *Id.* at 913.

14.  *Id.*

15.  *Id.*

16.  *Berry v. Dairyland County Mut. Ins. Co. of Tex.*, 534 S.W.2d 428, 429 (Tex.Civ.App.-Fort Worth 1976, no writ).

17.  997 S.W.2d 153 (Tex.1999).

18.  *Id.* at 154.

19.  *Id.* at 155 (alteration in original).

20.  *Id.* at 156–64.

21.  *Id.* at 156 n. 11, 157 n. 18.

22.  *Id.* at 157 n. 21.

vehicle.[23] We concluded that "Lindsey's injury arose out of the use of the Metzer truck" because "Metzer's son's sole purpose was to gain entry into the truck to retrieve his clothing."[24] He was not playing with the gun, trying to shoot it, or load or unload it.[25] He was using the vehicle "*qua* vehicle, rather than simply as an article of property,"[26] and his use of the underinsured vehicle injured the insured.

In the instant case, the policy provision at issue does not contain the broad "arise out of the ownership, maintenance or use of the ... motor vehicle" language. The policy instead says that coverage applies only if there is "bodily injury: resulting from a motor vehicle accident" while a covered person is "occupying" or "struck by" a motor vehicle. Sturrock's injury occurred when he was alighting from his vehicle. But that does not answer the question of whether his injury was one "resulting from a motor vehicle accident," as the PIP provisions of his policy require.

In *Lindsey* we only briefly discussed what constitutes an "auto accident."[27] The policy provision required that the injury result from "an accident." There was no question that the shooting in *Lindsey* was "an accident." We explained that the boy "did not intend to cause the shotgun to discharge or Lindsey to be injured, nor was it reasonably foreseeable that either consequence would result from the boy's trying to enter the pickup through the rear window."[28] But the insurer argued

that "accident" should be read to mean "auto accident." In addressing that argument, we assumed, without deciding, that the term "accident" as used in the uninsured/underinsured motorist policy provision could be limited to an "auto accident." We then cited our decision in *Griffin*, quoting its holding that " '[t]he term 'auto accident' refers to situations where one or more vehicles are involved with another vehicle, object, or person.' "[29] We then concluded that "[n]othing in the language or holding of either case suggests that an 'auto accident' requires a collision or excludes occurrences like the one in this case."[30]

Nothing in *Lindsey* suggests that the mere fact that an accident took place in an automobile means that it was an "auto accident." To the contrary, we cited *Peck* with approval for the proposition that when a vehicle is merely the situs of the injury, there is no "auto accident."[31] We approved the rationale in *Peck*, affirming "that a dog bite inflicted while the victim was in a car was not an auto accident."[32] The vehicle in *Peck* was being used for transportation when the dog bite occurred, and it was certainly an accident from the insured's point of view. But the vehicle was merely the location of an accident that could have occurred anywhere, just as Sturrock in the case presently before us could have tripped and injured himself in many locales other than his parked truck.

23. *Id.* at 157–61 & nn. 21, 25 & 26.

24. *Id.* at 158.

25. *Id.*

26. *Id.* at 156.

27. *Id.* at 155–56.

28. *Id.* at 155.

29. *Id.* (quoting *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex.1997)

(quoting *State Farm Mut. Ins. Co. v. Peck*, 900 S.W.2d 910, 913 (Tex.App.-Amarillo 1995, no writ) (words omitted from *Peck* by *Griffin* not indicated in the text of *Griffin* ))).

30. *Id.* at 156.

31. *See id.*

32. *Id.*

By contrast, the accidental shooting in *Lindsey* could only have occurred from use of the "vehicle *qua* vehicle." [33] The shotgun was on a gun rack mounted to the vehicle, and the boy came into contact with it when he was attempting to retrieve his clothing stored in the vehicle. We said that " '[i]f the discharge or incident could have occurred regardless of the vehicle, the courts seem to be consistent in holding there is no coverage.' " [34] Accordingly, we said that if the boy had been handling the gun while in the vehicle and it had accidentally discharged, there would have been no coverage. [35] We recognized in *Lindsey* that the question of whether there was even a *use* of a motor vehicle was "a close case," [36] as evidenced by the numerous,

sometimes conflicting decisions from other jurisdictions. [37]

The Court today cites five cases from other jurisdictions that find coverage when an insured is injured entering or exiting a vehicle or is injured near a vehicle. [38] But the policy language in each of these cases is different from Texas's standard PIP provision. Each of the policy provisions afforded broader coverage than Texas's PIP provision, and most importantly, none of the policy provisions in those cases required an auto or motor vehicle accident as a prerequisite to coverage. [39]

The Court cannot convincingly distinguish the decisions that *do* deal with policies that require an auto or motor vehicle

33. *Id.*

34. *Id.* at 159 (alteration in original) (quoting 8 Couch on Insurance 3d § 119:64, at 119–98 (1997)).

35. *Id.*

36. *Id.*

37. *Id.* at 157 n. 21, 158 n. 22, 159 n. 25, 161 n. 26, 162 nn. 27–30.

38. *See* 146 S.W.3d at 131 n.10.

39. *See Walker v. M & G Convoy, Inc.*, No. CIV. A. 88C–DE–191, 1989 WL 158511, at *1 (Del.Super.Ct. Nov.2, 1989) (finding coverage when statute provided that PIP coverage shall apply to each person "occupying a motor vehicle" and plaintiff slipped and fell on ice while walking around his employer's car trailer, onto which he was loading new cars, the engine was running and plaintiff was preparing to travel with the loaded trailer); *Padron v. Long Island Ins. Co.*, 356 So.2d 1337, 1338–39 (Fla.Dist.Ct.App.1978) (finding coverage when PIP statute said " 'bodily injury ... arising out of the ownership, maintenance, or use of a motor vehicle' " and insured's foot slipped as he was exiting the vehicle "causing his right leg to hit the bottom part of the car door and break his leg. The plaintiff did not slide out of the car, but injured himself on the

car door threshold as he was alighting therefrom."); *Putkamer v. Transamerica Ins. Corp. of Am.*, 454 Mich. 626, 563 N.W.2d 683, 686 (1997) (finding coverage under statute requiring coverage for " 'accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle' " and the statute said " '[a]ccidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless ... [T]he injury was sustained by a person while occupying, entering into, or alighting from the vehicle' " when the insured fell on ice as she placed her foot on the floor board of her car (alteration and emphasis in original)); *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 650–51 (Minn.1979) (finding coverage under statute that required coverage for " 'injury arising out of the maintenance or use of a motor vehicle' " and the policy said " '[m]aintenance or use of a motor vehicle' " includes use " '[i]ncident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it' " when passenger accompanied a friend to the scene of an accident and was electrocuted by a downed power line as he was opening the door of his vehicle (alterations added)); *Hill v. Metro. Suburban Bus Auth.*, 157 A.D.2d 93, 555 N.Y.S.2d 803, 805 (N.Y.App.Div.1990) (finding coverage under statute covering " 'use or operation' " of a bus when the bus door caught the plaintiff's arm and she

accident in order for coverage to apply. In *Farmers Insurance Co. of Washington v. Grelis*,[40] which was cited and relied on in *Peck*,[41] the policy provided coverage " 'for injury to each insured person caused by an automobile accident.' "[42] The policy defined "accident" as " 'a sudden event ... resulting in bodily injury neither expected nor intended by the insured person.' "[43] The policy defined " 'injured person' " as " 'an insured person who is injured by accident while occupying or being struck by an automobile.' "[44] The insured was in his van, parked on the side of a boulevard when he allowed a stranger to enter and was then robbed. The robber tripped on a part of the front seat of the van, which caused him to lunge forward and stab the insured. The robber then ordered the insured to drive away. The Washington court held this was not an "automobile accident."[45] That court reasoned that "[t]he fact that the van seats were incidentally involved does not convert this incident into an 'automobile accident.' "[46] The court concluded that "cases construing the words 'arising out of the ownership, maintenance, or use of the owned automobile,' a phrase which is common in many insurance policies ... [are] of no value because that language does not appear in the endorsement in question."[47]

Subsequently, the Washington Supreme Court had occasion to construe the term "motor vehicle accident" when used in a policy. The policy provided coverage for " 'bodily injury to each insured person caused by a *motor vehicle accident*.' "[48] The insured owned a camper affixed to his pickup. When he purchased the camper, it included an unattached wooden object intended as a step to facilitate entering and exiting. The insured was injured when he was in a park for overnight camping and exited the camper. He "stepped down from the truck's tailgate onto the unattached wooden step that had been placed on the ground. The step somehow gave way, causing [the insured] to fall. In falling, his arm caught on the edge of the tailgate, cutting it."[49] The Washington court held this was not a motor vehicle accident.[50] The court gave several examples of injuries that might occur while entering or exiting a vehicle that would not "comport with the plain, ordinary, and popular meaning of that term," including entering and exiting pickups and sport utility vehicles.[51] The court said:

> An image that easily comes to mind is an insured tripping while making the oft-difficult step down from the high doorway of a pickup truck or sports utility vehicle. Another is tripping—over, say, the threshold or a seatbelt—while *entering* a vehicle. Making all such accidents "motor vehicle accidents" for insurance purposes is a logical extension of the Court of Appeals' holding that "the use of a vehicle depends on an insured's ability to safely enter and exit it." However, this definition does not fit

tripped on a nail or tile on the staircase of the bus, lost her footing, and fell to the sidewalk).

**40.** 43 Wash.App. 475, 718 P.2d 812 (1986).

**41.** 900 S.W.2d at 913.

**42.** *Grelis*, 718 P.2d at 813.

**43.** *Id.*

**44.** *Id.*

**45.** *Id.*

**46.** *Id.*

**47.** *Id.* at 814.

**48.** *Tyrrell v. Farmers Ins. Co. of Wash.*, 140 Wash.2d 129, 994 P.2d 833, 835–36 (2000).

**49.** *Id.* at 835.

**50.** *Id.* at 838.

**51.** *Id.* at 837.

with "a *fair, reasonable,* and *sensible* construction as would be given to the contract by the *average* person purchasing insurance." Nor would this construction of the term "motor vehicle accident" comport with the plain, ordinary, and popular meaning of that term.[52]

The Washington Supreme Court correctly discerned that there are quite a number of insurance policies that use language much broader than "bodily injury resulting from a motor vehicle accident," which is the language in the Texas personal injury protection provisions. Cases construing policies with broader language, including those relied upon by the Court in

this case, are inapposite when faced with a policy that requires a "motor vehicle accident" or "auto accident."

Even when the language is broader and does not require an auto or motor vehicle accident, courts are divided on what is and is not covered. Courts have found no coverage under policy provisions covering (or directed by statute to cover) injuries incurred when "occupying, entering into, alighting from or using an automobile,"[53] or from the "use of the automobile ... while in or upon, entering or alighting from the automobile,"[54] or "arising out of operation, maintenance or use" of a vehicle,[55] or "arising out of the maintenance or

---

**52.** *Id.* (citations omitted); *see also State Farm Mut. Auto. Ins. Co. v. Rains,* 715 S.W.2d 232, 233 (Ky.1986) (finding that there was no "motor vehicle accident" in two separate, consolidated cases when, in the first case, the insured was hit in the head by an assailant with a baseball bat while trying to enter his vehicle, and in the second case, when the insured was in a vehicle that overturned when the driver was shot and killed, and the insured was shot while crawling out of the vehicle); *Jordan v. United Equitable Life Ins. Co.,* 486 S.W.2d 664, 666 (Mo.Ct.App.1972) (finding no coverage under a policy that required "accidental bodily injury" caused "solely by reason of an automobile ... accident" when the insured taxicab driver was robbed and shot to death by his passenger); *but see Ganiron v. Haw. Ins. Guar. Assoc.,* 69 Haw. 432, 744 P.2d 1210, 1212 (1987) (finding coverage under policy that required a "motor vehicle accident" for insured who was struck by a bullet from a gun fired from another vehicle on the freeway); *Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.,* 521 A.2d 308, 310 (Me.1987) (finding coverage under policy that required an "auto accident" when on hunting trip, insured's shotgun accidentally discharged, injuring passenger, when insured reached for the gun, which was in the back seat); *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.,* 318 N.C. 534, 350 S.E.2d 66, 67 (N.C.1986) (finding coverage under policy that required "bodily injury ... for which any covered person becomes legally responsible because of an auto accident" when passenger was injured when a rifle accidentally dis-

charged as the insured reached into the vehicle to retrieve a gun; rifle was not stored in a gun rack, but in a storage area behind the driver's seat).

**53.** *Kordell v. Allstate Ins. Co.,* 230 N.J.Super. 505, 554 A.2d 1, 2 (Ct.App.Div.1989) (finding no coverage when PIP statute said "sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile" and insured died of a heart attack while stopped at a red light).

**54.** *Ross v. Protective Indem. Co.,* 135 Conn. 150, 62 A.2d 340, 341 (1948) (finding no coverage under policy that required "bodily injury, caused by accident and arising out of the use of the automobile ... while in or upon, entering or alighting from the automobile" when passengers exited from vehicle that had pulled onto the shoulder, went to the rear of the vehicle to urinate, and were struck by another vehicle while conversing after urinating).

**55.** *Boykin v. State Farm Mut. Auto. Ins. Co.,* 195 Ga.App. 401, 393 S.E.2d 470, 471 (1990) (finding no coverage when statute said " 'accidental bodily injury' " includes " 'bodily injury ... arising out of the operation, maintenance, or use of a motor vehicle [as a motor vehicle] which is accidental' " when insured slipped on wet oily pavement about two feet from her car as she was approaching the vehicle after stopping at a convenience store for fueling); *Cole v. N.H. Ins. Co.,* 188 Ga.

use" of a vehicle,[56] or simply "arising out of the use" of a vehicle.[57] Conversely, coverage has been found when a policy covers (or is required by statute to cover) injury "arising out of the ownership, maintenance or use" of a vehicle,[58] or "arising out of maintenance or use" of a vehicle,[59] or

App. 327, 373 S.E.2d 36, 37, 38 (1988) (finding no coverage when statute provided " '[a]ccidental bodily injury' means bodily injury ... arising out of the operation, maintenance, or use of a motor vehicle ...." " '[o]ccupying' means to be in or upon a motor vehicle or engaged in the *immediate* act of entering into or alighting from the motor vehicle ...." " '[o]peration, maintenance, or use of a motor vehicle' means operation, *maintenance,* or use of a motor vehicle *as a vehicle*' " and insured slipped and fell while walking around her car after she had pumped and paid for gasoline, striking her arm on the fender and her knee on the pavement).

**56.** *Marklund v. Farm Bureau Mut. Ins. Co.,* 400 N.W.2d 337, 338 n. 2, 341 (Minn.1987) (finding no coverage under statute that said "injury arising out of the maintenance or use of a motor vehicle" when insured slipped on ice and fell on a self-service gasoline station's concrete apron after filling and capping his car's gas tank; insured did not come into physical contact with the vehicle after completing the refueling operation, although he was walking toward the passenger seat with the intention of getting a check from his wife to pay for the gas).

**57.** *Classified Ins. Corp. v. Vodinelich,* 368 N.W.2d 921, 923 (Minn.1985) (finding no coverage under policy that required "arising out of the use" of a motor vehicle when children died of carbon monoxide poisoning when their mother committed suicide by running the insured vehicle in an enclosed garage while leaving the door to the house ajar).

**58.** *Padron v. Long Island Ins. Co.,* 356 So.2d 1337, 1338 (Fla.Dist.Ct.App.1978) (finding coverage when PIP statute said " 'bodily injury ... arising out of the ownership, maintenance, or use of a motor vehicle' " and insured's foot slipped as he was exiting the vehicle "causing his right leg to hit the bottom part of the car door and break his leg. The plaintiff did not slide out of the car, but injured himself on the car door threshold as he was alighting therefrom").

**59.** *Blish v. Atlanta Cas. Co.,* 736 So.2d 1151, 1153, 1155 (Fla.1999) (finding coverage under PIP policy provision that required injury

" 'arising out of the ownership, maintenance, or use of a motor vehicle' " when insured was attacked by several assailants after his tire blew out and he stopped to change it); *Hernandez v. Protective Cas. Ins. Co.,* 473 So.2d 1241, 1242–43 (Fla.1985) (finding coverage under PIP policy provision that required injury " 'arising out of the ownership, maintenance or use of a motor vehicle' " when insured suffered injuries in the course of his arrest for an alleged traffic violation; supreme court inferred insured was occupying the vehicle at the time); *Barry v. Ill. Farmers Ins. Co.,* 386 N.W.2d 299, 300–01 (Minn.Ct. App.1986) (finding coverage under policy that said " 'maintenance or use of a motor vehicle' " means " 'maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it' " when insured backed vehicle out of her garage, got out to close the garage door with vehicle idling and slipped and fell on the ice as she approached the car door to get back in); *Jorgensen v. Auto–Owners Ins. Co.,* 360 N.W.2d 397, 399–401 (Minn.Ct.App.1985) (finding coverage when statute said " 'all loss suffered through injury arising out of the maintenance or use of a motor vehicle' " and " 'maintenance or use of an automobile' " means " 'maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. Maintenance or use ... does not include ... loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it' "; plaintiff was burned when he caught fire after a can of gasoline stored inside the trunk of his father's car exploded as he was opening the trunk to retrieve some jumper cables; plaintiff was not injured by the initial explosion; rather, he was injured when he reached in to remove the gas can, fearing that the car would blow up or cause the gas station (where the car was) to explode, and he tipped or caught the gasoline can on the trunk of the insured vehicle, causing gasoline to spill on himself; the parties stipulated that a defective trunk wire ignited the gas fumes); *Spisak v. Nationwide Mut. Ins. Co.,* 329 Pa.Super. 483, 478 A.2d 891,

"while occupying" a vehicle,[60] or "while alighting" a vehicle,[61] or simply "arising out of use" of a vehicle.[62]

To bolster its conclusion that Sturrock's injuries come within the PIP provision, the Court cites a number of decisions that hold there is coverage when a vehicle collides with someone entering or exiting a covered vehicle.[63] But no one questions that there has been an auto or motor vehicle accident when a vehicle strikes a pedestrian.

The Court cites two Texas cases to support its holding. One is *Southern Surety Co. v. Davidson*,[64] in which the policy did not require an auto or motor vehicle accident. The policy was not even an automobile liability policy. It covered " '[t]he effects resulting exclusively of all other causes from bodily injury sustained by the insured during the life of this policy solely through external, violent and accidental means.' "[65] The other case cited by the Court is *Berry v. Dairyland County Mu-*

*tual Insurance Co. of Texas* in which the court of appeals concluded "the phrase 'motor vehicle accident' can be construed as having more than one meaning" and that it was therefore the court's "duty . . . to give the phrase the construction that is most favorable to the insured."[66] As discussed above, this Court has since held that the term "auto accident" is unambiguous,[67] and *Berry's* holding is therefore unsound.

## II

Sturrock contends that the policy's provision requiring a "motor vehicle accident" as a prerequisite for coverage contravenes the statute that governs PIP provisions in Texas.[68] I disagree. First enacted in 1973,[69] that statute requires automobile liability insurance policies to offer PIP coverage.[70] It says,

No automobile liability insurance policy, including insurance issued pursuant

892 (1984) (finding coverage under policy that required losses sustained " 'as a result of an accident that arises out of the maintenance or use of a motor vehicle as a motor vehicle' " when insured and a female companion died of carbon monoxide poisoning in the backseat of the insured vehicle while engaging in sex acts with one another).

60. *Walker v. M & G Convoy, Inc.*, No. CIV. A. 88C–DE–191, 1989 WL 158511, at *1 (Del.Super.Ct. Nov.2, 1989) (finding coverage when statute provided that PIP coverage shall apply to each person "occupying a motor vehicle" and plaintiff slipped and fell on ice while walking around his employer's car trailer, onto which he was loading new cars, the engine was running, and plaintiff was preparing to travel with the loaded trailer).

61. *Mid–Continent Cas. Co. v. Giuliano*, 166 So.2d 443, 445 (Fla.1964) (finding coverage under PIP policy provision that required "bodily injury . . . caused by accident while . . . alighting from" the insured motor vehicle when insured injured his back while exiting the insured motor vehicle).

62. *State Farm Mut. Auto. Ins. Co. v. Barth*, 579 So.2d 154, 155 (Fla.Dist.Ct.App.1991) (finding coverage under PIP policy provision that required " 'loss sustained . . . as a result of bodily injury . . . arising out of . . . use of a motor vehicle' " when insured was attacked by an assailant while sitting in her car, struggled free, and fell out the driver's door).

63. 146 S.W.3d at 130–31 & n.11.

64. 280 S.W. 336 (Tex.Civ.App.-Fort Worth 1926, no writ).

65. *Id.* at 336 (alteration added).

66. 534 S.W.2d 428, 433 (Tex.Civ.App.-Fort Worth 1976, no writ).

67. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex.1997).

68. Tex. Ins.Code art. 5.06–3.

69. Act of April 11, 1973, 63d Leg., R.S., ch. 52, § 1, 1973 Tex. Gen. Laws 90, 90–93.

70. Tex. Ins.Code art. 5.06–3(a).

to an assigned risk plan established under authority of Section 35 of the Texas Motor Vehicle Safety–Responsibility Act, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless personal injury protection coverage is provided therein or supplemental thereto.[71]

The statute's definition of "personal injury protection" is detailed, but it does not specify whether merely "an accident" will trigger coverage or whether a "motor vehicle accident" is required.[72] The statute uses the term "the accident" six times, and the phrase "the date of accident" once, without expressing whether "the accident" contemplates, or does not contemplate, an automobile or motor vehicle accident:

(b) "Personal injury protection" consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of the named insured's motor vehicle including a guest occupant, up to an amount of $2,500 for each such person for payment of all reasonable expenses arising from *the accident* and incurred within three years from the date thereof for necessary medical, surgical, Xray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, and in the case of an income producer, payment of benefits for loss of income as the result of *the accident;* and where the person injured in *the accident* was not an income or wage producer at the time of *the accident,* payments of bene-

fits must be made in reimbursement of necessary and reasonable expenses incurred for essential services ordinarily performed by the injured person for care and maintenance of the family or family household. The insurer providing loss of income benefits may require, as a condition of receiving such benefits, that the insured person furnish the insurer reasonable medical proof of his injury causing loss of income. The personal injury protection in this paragraph specified shall not exceed $2,500 for all benefits, in the aggregate, for each person.

(c) The benefits required by this Act shall be payable without regard to the fault or nonfault of the named insured or the recipient in causing or contributing to *the accident,* and without regard to any collateral source of medical, hospital, or wage continuation benefits. An insurer paying benefits pursuant to this Act shall have no right of subrogation and no claim against any other person or insurer to recover any such benefits by reason of the alleged fault of such other person in causing or contributing to *the accident.*

(d) All payments of benefits prescribed under this Act shall be made periodically as the claims therefor arise and within thirty (30) days after satisfactory proof thereof is received by the insurer subject to the following limitations:

(1) The coverage described in this Act may prescribe a period of not less than six months after *the date of accident* within which the original proof of loss with respect to a claim for benefits must be presented to the insurer.[73]

---

71. *Id.*

72. *Id.* art. 5.06–3(b)–(h).

73. *Id.* art. 5.06–3(b), (c), (d)(1) (emphasis added).

The decision in *Le v. Farmers Texas County Mutual Insurance Co.* considered whether this statute permitted the State Board of Insurance to promulgate a policy that required a "motor vehicle accident" and concluded that it did.[74] That court reasoned that "[i]t is likely that the statewide cost for injuries which happen to occur in a car is higher than the cost of paying for injuries which result from a motor vehicle accident."[75] It gave deference to the Board, concluding, "[w]e do not find the Board's construction repugnant to the statute."[76] The court of appeals disagreed with *Berry v. Dairyland County Mutual Insurance Co.*, which had decided, in resolving a venue plea, that the term "motor vehicle accident" was repugnant to article 5.06–3.[77]

The reasoning in *Le v. Farmers Texas County Mutual Insurance Co.* is sound. It is certainly reasonable and permissible under article 5.06–3 for a policy providing personal injury protection to require the occurrence of a "motor vehicle accident" before coverage is applicable. The coverage afforded under article 5.06–3(c) is in addition to any other insurance coverage, including medical insurance.[78] An insurer paying personal injury protection coverage has no right of subrogation for the fault of another person in causing or contributing to "the accident."[79] Article 5.06–3 does not prohibit automobile policies issued in this state from requiring that the injuries be sustained as a result of a "motor vehicle accident."

\* \* \* \* \*

We are constrained by the policy's language. Sturrock's injuries did not constitute "bodily injury ... resulting from a motor vehicle accident." I would reverse and render judgment for the insurer in this case.

**74.** 936 S.W.2d 317, 323–24 (Tex.App.-Houston [1st Dist.] 1996, writ denied).

**75.** *Id.* at 324.

**76.** *Id.*

**77.** 534 S.W.2d 428, 431 (Tex.App.-Ft. Worth 1976, no writ).

