Chris SCHULZ, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

No. 01–95–01478–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 5, 1996.

Rehearing Overruled Oct. 21, 1996.

---

Robert Oberholtzer, Houston, for Appellant.

Charles A. Kreger, Conroe, for Appellee.

Before SCHNEIDER, C.J., and WILSON and HEDGES, JJ.

## OPINION

SCHNEIDER, Chief Justice.

Appellant Chris Schulz appeals the trial court's order granting State Farm Automobile Insurance Company's motion for summary judgment. We affirm.

### Background

The summary judgment evidence shows that on August 15, 1990, Gunar Fulk, Schulz's son, was driving a pickup truck owned by Schulz's husband and insured by State Farm. Fulk, accompanied by a friend, gave a ride to Lonnie Earl Johnson. Some time thereafter, Johnson shot three fatal rounds into Fulk's face and chest as Fulk was standing outside the truck. Johnson then killed Fulk's friend with a shot to his back.

Schulz sued State Farm seeking to recover benefits under the personal injury protection (PIP) and auto death indemnity (ADI) coverages provided under a State Farm insurance policy that covered the vehicle.[1] In her original petition, Schulz claimed Johnson pulled the gun in an apparent attempt to hijack the truck. She also claimed that, at the time the

---

1. Schulz originally sought to recover under the uninsured motorist provision of the policy as well. This ground of recovery was later abandoned by Schulz prior to summary judgment.

shots were fired, Fulk was either seated in the truck or, in the alternative, had been ordered at gunpoint to get out and was kneeling next to the truck. However, there is nothing in the record, other than Schulz's assertions in her original petition, to support the allegations that Fulk's truck was hijacked, that Fulk was ordered out of the truck or that Fulk was kneeling next to the truck when shot.[2]

After considerable discovery, State Farm filed its motion for summary judgment. In the motion, State Farm argued that (1) because there was no collision or automobile accident between the insured truck and any other vehicle as contemplated by the terms of the policy, (2) because Fulk was not "occupying" the insured vehicle when he sustained his fatal injuries, and (3) because there was no causal relationship between the insured vehicle and the incident giving rise to the injuries, Schulz was not entitled to any benefits under the policy. In support of its motion for summary judgment, State Farm attached certain documents and discovery responses filed in the cause to its motion, including:

> (1) the affidavit of attorney Charles A. Kreger, "authenticating responses to requests for admissions and answers to interrogatories;"

> (2) Schulz's responses to State Farm's requests for admissions. In these responses, Schulz admitted Fulk was not "inside" the vehicle at the time he was shot nor were Fulk's injuries the result of "the physical motion of a vehicle coming to a sudden stop;"

> (3) Schulz's answers to interrogatories. Within these answers, Schulz states Fulk was shot outside the driver's side door of the truck; and

> (4) the affidavit of Pete G. Serrata, custodian of records of State Farm, authenticating a true and correct copy of the insurance policy issued to Walter W. Schulz, Jr., Chris Schulz's husband.

In her response to State Farm's motion for summary judgment, Schulz contended, notwithstanding her responses and admissions, that the PIP and ADI provisions contained in the policy provided coverage to persons "occupying" the insured vehicle. Relying upon the "Definitions" section of the policy, wherein "occupying" is defined as "in, upon, getting in, on, out or off," Schulz argued Fulk was in fact "occupying" the vehicle at the time he was shot and killed because his status as an "occupant" continued, even though he was shot outside the vehicle, because he was in relatively close proximity to the vehicle for purposes related to the vehicle and because his exit from the vehicle was not voluntary, but rather a result of force. Without specifying the grounds upon which it based its decision, the trial court granted State Farm's motion for summary judgment.

## Points of Error

In her first three points of error, Schulz contends the trial court erred in granting summary judgment because State Farm failed to conclusively establish: (1) that Fulk was not "occupying" his vehicle; (2) that Fulk's death did not result from a "motor vehicle accident;" and (3) that there was a lack of causal relationship between the insured vehicle and the criminal assault so as to preclude coverage under the PIP and ADI provisions. In her fourth point of error, Schulz argues there is no sound public policy to be furthered by denying car-jack victims, or their survivors, PIP or ADI benefits.

### Standard of Review

■ Under Tex.R.Civ.P. 166a(c), summary judgment is proper if the movant has established there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 774 (Tex.1995). A summary judgment for a defendant that disposes of an entire cause is proper only if it conclusively disproves at least one of the elements

---

**2.** In her response to State Farm's motion for summary judgment, Schulz noted that Johnson was eventually tried and convicted of two counts of capital murder and was sentenced to death. Schulz did not attach a copy of the judgment from this case.

of each of the plaintiff's causes of action. *Id.* On review, we view the evidence in a light most favorable to the non-movant. *Id.* at 775. Once the defendant has established its right to summary judgment, the burden shifts to the plaintiff, who must then respond and present any issues to the trial court that would preclude summary judgment. *Soodeen v. Rychel,* 802 S.W.2d 361, 362 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

█ When a summary judgment does not specify the ground upon which the trial court granted it, the reviewing court will affirm the judgment if any theory included in the motion is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Summers v. Fort Crockett Hotel, Ltd.,* 902 S.W.2d 20, 25 (Tex.App.—Houston [1st Dist.] 1995, writ denied). The trial court did not specify the ground upon which it granted summary judgment.

**PIP coverage**

The PIP provisions of the policy provided: "[W]e will pay Personal Injury Protection benefits because of bodily injury resulting from a motor vehicle accident, and sustained by a 'covered person.' "

"Covered person" as used in this part means:

1. You or any family member:

   a. while occupying; or

   b. when struck by a motor vehicle designed for use mainly on public roads or a trailer of any type.

"Occupying" means in, upon, getting in, on, out or off.

The policy clearly intended to limit PIP coverage to only those "covered persons" whose injuries were a result of a motor vehicle accident. However, the Insurance Code does not include the limiting term "motor vehicle accident" in its definition of PIP coverage:

"Personal injury protection" consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of the named insured's motor vehicle including a guest or occupant, up to an amount of $2,500 for each person for payment of all reasonable expenses *arising from the accident* . . .

Tex.Ins.Code Ann. art. 5.06–3(b) (Vernon 1981) (emphasis added).[3]

The differences between the PIP provisions of the policy and the language contained within the Insurance Code are identical to the differences that were at issue in *Le v. Farmers Texas County Mutual Insurance Company,* No. 01–94–00880–CV, —— S.W.2d ——, 1996 WL 445179 (Tex.App.—Houston [1st Dist.], Aug. 8, 1996, n.w.h.). In *Le,* the plaintiff was riding in the back right-hand side of the insured vehicle when another vehicle drove by and shot into the vehicle the plaintiff was traveling in, striking the plaintiff. Slip op. at 2, —— S.W.2d at ——. The two cars did not collide and the shooter's identity was unknown. *Id.* We considered whether the term "the accident," as utilized in the Insurance Code, limits recovery to injuries resulting from motor vehicle accidents only. We held, based upon legal and public policy reasons, that the term "the accident" means the motor vehicle accident for which the legislature created automobile liability insurance; it does not include all accidents that happen to occur in a motor vehicle. *Id.* at 10–13, at ——–——.

█ Schulz was not entitled to recover under the PIP provisions of the policy simply because the covered vehicle may have been involved. No evidence was presented to indicate Fulk's injuries resulted from a motor vehicle accident.

**ADI provisions**

The relevant provision of the ADI coverage portion of the policy reads:

---

**3.** State Farm does not argue that Fulk was not a "family member" within the meaning of the policy.

We will pay the principal sum stated in the Schedule in the event of the death of the **person** which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while **occupying,** or through being struck by, an auto ...

Thus, to have been entitled to ADI coverage, Schulz was required to show that Fulk's injuries resulted from an accident while he was "occupying" the insured truck.

As defined by the State Farm policy, "occupying" means "in, upon, getting in, on, out or off." Schulz argued in response to the motion for summary judgment, and argues here on appeal, that Fulk was an "occupant" of the vehicle because his position inside the vehicle came to an end solely because a hijacker's gun forced him out of the vehicle. Schulz cites a number of cases wherein courts have held, with respect to coverage under insurance policies, that claimants continued to be "occupants" of their vehicles if they were in close proximity to their vehicle and their activities were still vehicle-oriented at the time they sustained their injuries. *See National Life & Accident Ins. Co. v. Hunter,* 519 S.W.2d 709 (Tex.Civ.App.—Beaumont 1975, writ ref'd); *Hart v. Traders & Gen. Ins. Co.,* 487 S.W.2d 415 (Tex.Civ.App.—Fort Worth 1972, writ ref'd); *Utica Mut. Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984); *Moherek v. Tucker,* 69 Wis.2d 41, 230 N.W.2d 148 (1975).

For summary judgment evidence, Schulz relied only on her verified pleadings and responses. In support of her argument that Fulk was an "occupant" of the truck at the time he was shot, Schulz relied upon her original petition and her answers to interrogatories. In her petition, Schulz alleged the vehicle Fulk was riding in was hijacked by Johnson, that Fulk was ordered out of the vehicle, and that Fulk was then shot and killed as he stood or kneeled just outside the driver's side door of the truck. In her response to State Farm's request for admissions, Schulz denied that Fulk was not "in" the vehicle at the time he was shot. Assuming these facts, if proven true, would bring Fulk within the meaning of the term "occupant," Schulz failed to provide any competent evidence, by way of affidavit or otherwise, to support these facts.

■■■ Pleadings and responses are not proper summary judgment evidence. *Liggett v. Blocher,* 849 S.W.2d 846, 852 (Tex.App.—Houston [1st Dist.] 1993, no writ). For a nonmovant to raise a fact issue, there must be evidence to support her assertions; mere assertions are not enough. *Id.* Answers to interrogatories and discovery responses may only be used against the party who answered them. TEX.R.CIV.P. 168(2); *Thalman v. Martin,* 635 S.W.2d 411, 414 (Tex.1982); *American Maintenance & Rentals, Inc. v. Estrada,* 896 S.W.2d 212, 218–19 (Tex.App.—Houston [1st Dist.] 1995, no writ).

■ Schulz's reliance upon her original petition and the answers she provided to discovery from State Farm did not provide competent summary judgment evidence. The only competent summary judgment evidence presented to the trial court was that provided by State Farm. This evidence showed only that Fulk was killed as a result of three gunshot wounds to the face and chest. There was no competent summary judgment evidence to support Schulz's claim that Fulk was in any way "occupying" the vehicle at the time he was shot. This negates at least one essential element of Schulz's claims under the ADI provision of the policy and supports the trial court's conclusion that there was a lack of causal relationship between the vehicle and Fulk's death so as to preclude coverage under the ADI provision of the policy.

We overrule Schulz's first three points of error.

**Public Policy**

In her final point of error, Schulz argues the trial court erred in granting summary judgment because there is no sound public policy to be furthered by denying car-jacking victims, or their survivors, PIP or ADI benefits. Based upon the disposition of points

one through three, we need not address this issue.

We affirm the judgment of the trial court.