NO. 07-03-0340-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



SEPTEMBER 7, 2004


______________________________



THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, 



 Appellant


v.



SANDRA PEARSON, et al., 



 Appellees

_________________________________



FROM THE 128TH DISTRICT COURT OF ORANGE COUNTY;



NO. A990452-C; HON. PAT CLARK, PRESIDING


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Appellant, the Insurance Company of the State of Pennsylvania (the Company),
appeals from a summary judgment granting Sandra Pearson, as next friend of Karch
William Pearson and Khyle Armando Pearson, Rebecca Cooey, as next friend of Zachary
Allen Pearson, and William E. Pearson, Sr., individually and as independent administrator
of the estate of William E. Pearson (William) (collectively referred to as Pearson) recovery
against the Company. The parties had filed cross motions for summary judgment in a suit
by Pearson to recover upon an uninsured/underinsured (UIM) motorist insurance policy
issued by the Company. The latter contends, through five issues, that the trial court erred
in granting Pearson's summary judgment while denying its own. We find the third issue
dispositive. Therein, the Company posits that it was not obligated to Pearson since William
was not an insured under the policy. This is purportedly so because he was not
"occupying" a covered automobile at the time he was struck and killed by the underinsured
motorist. We sustain the issue, reverse the judgment of the trial court, and render
judgment for the Company. 

Background


 William was employed by Georgia Electric Company in Texas. However, at the time
of his death he was working in the state of Georgia, along with Carlton Hudgins, in an
emergency lane on Interstate 75. A taxi struck him from behind while he was performing
his employment duties. The two men had driven to the site in a pickup truck owned by
Georgia Electric. They were standing outside the parked truck when the taxi hit them. 
William died from his injuries. Furthermore, the cab's insurer tendered its policy limit of
$15,000 as recompense. 

 Georgia Electric had two automobile policies issued by the Company. One provided
insurance coverage for vehicles owned by Georgia Electric that were required to have no-fault benefits in any state (other than Texas) where they were licensed or principally
garaged. The other provided coverage for vehicles in Texas (the Texas Policy). The
coverage limit for injury caused by underinsured or uninsured drivers was $1,000,000 per
accident under both policies. 

 The Company settled Hudgins' claim under the policy for states other than Texas. 
The sum of $900,000 was paid. The remaining $100,000 was tendered to Pearson, who
also received $1,000,000 under an umbrella insurance policy. However, Pearson filed suit
for declaratory judgment seeking a determination about whether the Texas policy also
provided coverage. Both Pearson and the Company moved for summary judgment. The
trial court denied the motion of the Company but granted that of Pearson. It also awarded
Pearson $900,000 plus prejudgment interest and costs. 

Standard of Review


 The standard by which we review a traditional motion for summary judgment is well
established. We refer the litigants to Nixon v. Mr. Property Management Co., 690 S.W.2d
546, 548 (Tex. 1985) and Davis v. First Indemnity of Am. Ins. Co., 56 S.W.3d 106, 108
(Tex. App.-Amarillo 2001, no pet.) for its explanation.

 As previously mentioned, the Company argued that recovery should have been
denied Pearson because William was not an insured under the policy. And, he was not
because he was not "occupying" a vehicle covered by the policy when the cab hit him. 

 According to the insurance policy in question, an insured was defined in three ways. 
That pertinent here concerned a person "occupying a covered auto." That is, "any person
occupying a covered auto" was deemed an insured. Furthermore, the word "occupying"
was defined in the policy as meaning "in, upon, getting in, on, out or off." So, because
William allegedly was not "in, upon, getting in, on, out or off" of a covered vehicle when hit
by the cab, he was not an insured. We agree.

 It is beyond dispute that general rules of contract interpretation apply to the
interpretation of insurance contracts. Progressive County Mut. Ins. Co. v. Sink, 107
S.W.3d 547, 551 (Tex. 2003). Similarly unquestionable is the rule holding that when terms
are defined in an insurance policy, that definition controls their interpretation. Trinity
Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 823 (Tex. 1997). 

 Next, we have found three opinions in which courts of this state were asked to
determine whether an individual was an insured due to his "occupying" a vehicle and the
term "occupying" was defined (in the policy) the same way it was here. See e.g., McKiddy
v. Trinity Lloyd's Ins. Co., No. 05-03-0908-CV, 2004 Tex. App. LEXIS 2919 (Tex.
App.-Dallas April 1, 2004, pet. filed); Schulz v. State Farm Mut. Auto Ins. Co., 930 S.W.2d
872 (Tex. App.-Houston [1st Dist.] 1996, no writ); Fulton v. Texas Farm Bureau Ins. Co.,
773 S.W.2d 391 (Tex. App.-Dallas 1989, writ denied). In each, the injury occurred while
the complainant or decedent was outside the vehicle. Yet, that the injury so occurred did
not alone determine whether he was in, upon, or getting in, on, out or off of the
conveyance, according to the courts. Instead, each either implicitly or explicitly focused
upon the existence, if any, of a causal nexus between the covered vehicle and the injuries
suffered. McKiddy v. Trinity Lloyd's Ins. Co., No. 05-03-0908-CV, 2004 Tex. App. LEXIS
2919 at 6-8; Schulz v. State Farm Mut. Auto Ins. Co., 930 S.W.2d at 876; Fulton v. Texas
Farm Bureau Ins. Co., 773 S.W.2d at 392-93. In other words, the respective courts read
the phrase "in, upon, getting in, on, out or off" as requiring not necessarily some physical
contact with the vehicle but rather a causal relationship between the vehicle and the
injuries. Id. And, in assessing the existence of this relationship, the courts considered
such indicia as the physical proximity between the injured person and the vehicle, McKiddy
v. Trinity Lloyd's Ins. Co., supra, the amount of time during which the injured person was
outside the vehicle, id., the purpose for being and his actions while outside the vehicle, id.,
Fulton v. Texas Farm Bureau Ins. Co., supra, and whether an impact with the covered
vehicle caused the injuries. McKiddy v. Trinity Lloyd's Ins. Co., supra. 

 While one could question whether physical contact with the covered vehicle is
actually necessary when the potential insured suffers injury at the hands of the uninsured
or underinsured driver, the indicia cited in McKiddy and the others compel that more is
needed than the mere presence of a covered vehicle. In essence, getting in, getting on,
getting off and getting out connote not only action immediately directed towards entering
or exiting the auto but also an ongoing yet incomplete process. For instance, there is a
difference between getting out of a car (a process that has begun but has yet to be
completed) and being out of a car (a completed process). According to the policy the
former is covered under the definition of "occupying," but the latter is not. 

 Next, where one lies in the continuum of an ongoing process versus a completed
act depends on the interaction of such factors as those addressed in McKiddy, Schulz, and
Fulton. Taken together, those opinions direct us to focus upon whether there was a
conjunction between time, place, act, and purpose. As illustrated in Fulton, merely walking
in a parking lot after exiting from a car to search for witnesses to an auto accident failed
to evince the requisite conjunction. Simply put, the circumstances showed a completed
process. That is, Fulton was no longer "getting" out or off of the vehicle when hit for 1)
some time had passed (though it may have been brief) from the moment he relinquished
contact with the car, 2) he was some distance from the car (though he and the car may
have been in general proximity to each other), 3) he was walking across the parking lot,
and 4) his purpose was not directed towards getting in or out of the car. Thus, there was
no conjunction between time, place, act and purpose immediately directed towards
entering or leaving the insured vehicle. The process implicit in the definition of "occupying"
had been completed by Fulton, and the immediate interplay between the indicia alluded
to in McKiddy, Schulz, and Fulton was non-existent. 

 Here, the evidence of record simply indicates that William was outside the parked
truck performing his employment duties in the emergency lane of Interstate 75 when he
was struck from behind by the cab. There is no evidence suggesting that he just left the
confines of the vehicle or that he was outside it for only a very brief period when the
incident occurred, that he was returning to the vehicle at the time, that his purpose for the
vehicle was anything other than having it as a potential means of conveyance if and when
he chose to depart, that the vehicle was being used in any way incremental to the
particular duties being performed (as opposed to it simply being parked on the interstate),
or that he was touching or attempting to touch or otherwise immediately adjacent to it at
the time. Again, the record merely discloses that the truck was simply present as William
and his co-worker, who were standing on the tarmac performing their jobs, were hit. Given
this, we conclude that there is no evidence of a nexus (or conjunction of time, place,
purpose, and act) between the truck and William's injuries to satisfy relationship
contemplated in McKiddy, Fulton, and Schulz. Thus, and as a matter of law, he was
neither "occupying" the truck nor an insured under the policy when the cab hit him.

 Our disposition of the third issue relieves us from having to address the others
asserted by the Company. Accordingly, we reverse the judgment of the trial court and
render judgment decreeing that Pearson take nothing from the Company.


 Brian Quinn

 Justice



ption Locked="false" Priority="66" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium List 2 Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-11-00074-CR, 07-11-0075-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



MAY
20, 2011

 



 

JOSE ANGEL MARTINEZ, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE CRIMINAL DISTRICT COURT
NO. 5 OF DALLAS COUNTY;

 

NO. F98-29599-L, F01-32449-K; HONORABLE CARTER THOMPSON, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

ABATEMENT AND REMAND

            Appellant,
Jose Angel Martinez, appeals from the trial courts determination to proceed to
adjudication of guilt for the offense of aggravated assault with a deadly
weapon and from his plea of guilty for the offense of sexual assault on a
child.  The Clerks Records were received
in these causes on April 7, 2011.  It appearing
that the certification of defendants right of appeal in each cause is
defective, we will abate these appeals and remand the cause to the trial court
for further proceedings.

            As
to appellate cause number 07-11-0074-CR (trial court cause number F98-29599-L),
pursuant to a plea bargain, appellant was granted deferred adjudication for the
offense of aggravated assault with a deadly weapon in December 1998.  He was placed on community supervision for
ten years and assessed a $300 fine.  The
State moved to proceed with an adjudication of guilt in June of 1999.  The State amended its motion on December 3,
2008,[1]
alleging that appellant violated five of the terms and conditions of his
community supervision.  One of these
alleged violations was that appellant committed the
offense of sexual assault of a child in May of 2005.  This alleged offense was separately indicted
as trial court cause number F01-32449-L (appellate cause number 07-11-0075-CR).

            At
a hearing held as to both causes, the trial court first took up the motion to
proceed to adjudication for the aggravated assault offense.  Appellant entered a plea of true to the
allegations in the States motion as part of a plea bargain agreement by which
the State would recommend that appellant be sentenced to eighteen years
confinement.  The trial court adjudicated
appellant guilty of the original offense and sentenced him to eighteen years
confinement.  The trial court then took up
the issue of the sexual assault of a child offense.  In this case, appellant pled guilty to the
offense as part of a plea bargain agreement by which the State would recommend
that appellant be sentenced to eighteen years confinement.  The trial court accepted this plea bargain,
found appellant guilty, and sentenced him to eighteen years confinement.  Appellant timely perfected
appeal in each cause.

            The
certification of defendants right of appeal filed in cause number
07-11-0074-CR indicates that it is a plea-bargain case, and the defendant has
NO right of appeal.  However, as this
case is on appeal as the adjudication of an offense for which appellant was
originally placed on deferred adjudication community supervision, Texas Rule of
Appellate Procedure 25.2(a)(2) does not apply to
restrict appellants right of appeal.  See
Hargesheimer v. State, 182 S.W.3d 906, 913 (Tex.Crim.App.
2006).  See also Tex. Code Crim. Proc. Ann. art. 42.12,
§ 5(b) (West Supp. 2010); Dears v. State, 154 S.W.3d 610, 613 (Tex.Crim.App. 2005). 
Further, the record does not reflect that appellant voluntarily,
knowingly, and intelligently waived his right of appeal in exchange for an
agreed sentence.  See
Ex parte Delaney, 207 S.W.3d 794, 799 (Tex.Crim.App.
2006); Garcia v. State, No. 14-07-00643-CR, 2007 Tex.App.
LEXIS 7055, at *3-*4 (Tex.App.Houston
[14th Dist.] Aug. 30, 2007, no pet.)
(not designated for publication).  Consequently, it appears that the
certification of defendants right of appeal entered by the trial court in
appellate cause number 07-11-0074-CR is defective.

            The
certification of defendants right of appeal filed in cause
number 07-11-0075-CR indicates that the defendant has waived the right of
appeal.  While the record reflects that
this case was a plea bargain case for which appellant would generally not have
the right of appeal, there is no waiver of appellants right of appeal
contained within the record.  As such, it
appears that the certification entered in appellate cause number 07-11-0075-CR
is also defective.

            Consequently,
we now abate these appeals and remand them to the trial court for further
proceedings.  Upon remand, the trial
court shall utilize whatever means necessary to secure certifications of
defendants right of appeal that comply with Rule 25.2(d) in each cause
referenced herein.  Once properly
completed and executed, the certifications shall be included in supplemental
clerks records.  See Tex. R. App. P. 34.5(c)(2).  The trial court
shall cause the supplemental clerks records to be filed with the Clerk of this
Court by June 20, 2011.  This order
constitutes notice to all parties, pursuant to Rule 37.1 of the Texas Rules of
Appellate Procedure, of the defective certification.  If a supplemental clerks record containing a
proper certification is not filed in accordance with this order, this cause
will be referred to the Court for dismissal. 
See Tex. R. App. P. 25.2(d).

            It
is so ordered.

 

                                                                                                Per
Curiam

 

Pirtle,
J., not participating.  

 

Do
not publish.  

 











[1] It appears that, while a capias
was issued for the arrest of appellant in 1999, he was not apprehended until
2008.