NO. 07-03-0340-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 7, 2004
_____

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

Appellant

v.

SANDRA PEARSON, et al.,

Appellees
_____

FROM THE 128TH DISTRICT COURT OF ORANGE COUNTY;

NO. A990452-C; HON. PAT CLARK, PRESIDING
_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Appellant, the Insurance Company of the State of Pennsylvania (the Company), appeals from a summary judgment granting Sandra Pearson, as next friend of Karch William Pearson and Khyle Armando Pearson, Rebecca Cooey, as next friend of Zachary Allen Pearson, and William E. Pearson, Sr., individually and as independent administrator of the estate of William E. Pearson (William) (collectively referred to as Pearson) recovery against the Company. The parties had filed cross motions for summary judgment in a suit by Pearson to recover upon an uninsured/underinsured (UIM) motorist insurance policy issued by the Company. The latter contends, through five issues, that the trial court erred in granting Pearson's summary judgment while denying its own. We find the third issue

dispositive. Therein, the Company posits that it was not obligated to Pearson since William was not an insured under the policy. This is purportedly so because he was not "occupying" a covered automobile at the time he was struck and killed by the underinsured motorist. We sustain the issue, reverse the judgment of the trial court, and render judgment for the Company.

## Background

William was employed by Georgia Electric Company in Texas. However, at the time of his death he was working in the state of Georgia, along with Carlton Hudgins, in an emergency lane on Interstate 75. A taxi struck him from behind while he was performing his employment duties. The two men had driven to the site in a pickup truck owned by Georgia Electric. They were standing outside the parked truck when the taxi hit them. William died from his injuries. Furthermore, the cab's insurer tendered its policy limit of $15,000 as recompense.

Georgia Electric had two automobile policies issued by the Company. One provided insurance coverage for vehicles owned by Georgia Electric that were required to have no-fault benefits in any state (other than Texas) where they were licensed or principally garaged. The other provided coverage for vehicles in Texas (the Texas Policy). The coverage limit for injury caused by underinsured or uninsured drivers was $1,000,000 per accident under both policies.

The Company settled Hudgins' claim under the policy for states other than Texas. The sum of $900,000 was paid. The remaining $100,000 was tendered to Pearson, who also received $1,000,000 under an umbrella insurance policy. However, Pearson filed suit for declaratory judgment seeking a determination about whether the Texas policy also

provided coverage. Both Pearson and the Company moved for summary judgment. The trial court denied the motion of the Company but granted that of Pearson. It also awarded Pearson $900,000 plus prejudgment interest and costs.

### *Standard of Review*

The standard by which we review a traditional motion for summary judgment is well established. We refer the litigants to *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985) and *Davis v. First Indemnity of Am. Ins. Co.,* 56 S.W.3d 106, 108 (Tex. App.–Amarillo 2001, no pet.) for its explanation.

As previously mentioned, the Company argued that recovery should have been denied Pearson because William was not an insured under the policy. And, he was not because he was not "occupying" a vehicle covered by the policy when the cab hit him.

According to the insurance policy in question, an insured was defined in three ways. That pertinent here concerned a person "occupying a covered auto." That is, "any person occupying a covered auto" was deemed an insured. Furthermore, the word "occupying" was defined in the policy as meaning "in, upon, getting in, on, out or off." So, because William allegedly was not "in, upon, getting in, on, out or off" of a covered vehicle when hit by the cab, he was not an insured. We agree.

It is beyond dispute that general rules of contract interpretation apply to the interpretation of insurance contracts. *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). Similarly unquestionable is the rule holding that when terms are defined in an insurance policy, that definition controls their interpretation. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex. 1997).

3

Next, we have found three opinions in which courts of this state were asked to determine whether an individual was an insured due to his "occupying" a vehicle and the term "occupying" was defined (in the policy) the same way it was here. *See e.g., McKiddy v. Trinity Lloyd's Ins. Co.*, No. 05-03-0908-CV, 2004 Tex. App. LEXIS 2919 (Tex. App.–Dallas April 1, 2004, pet. filed); *Schulz v. State Farm Mut. Auto Ins. Co.*, 930 S.W.2d 872 (Tex. App.–Houston [1st Dist.] 1996, no writ); *Fulton v. Texas Farm Bureau Ins. Co.*, 773 S.W.2d 391 (Tex. App.–Dallas 1989, writ denied). In each, the injury occurred while the complainant or decedent was outside the vehicle. Yet, that the injury so occurred did not alone determine whether he was in, upon, or getting in, on, out or off of the conveyance, according to the courts. Instead, each either implicitly or explicitly focused upon the existence, if any, of a causal nexus between the covered vehicle and the injuries suffered. *McKiddy v. Trinity Lloyd's Ins. Co.*, No. 05-03-0908-CV, 2004 Tex. App. LEXIS 2919 at 6-8; *Schulz v. State Farm Mut. Auto Ins. Co.*, 930 S.W.2d at 876; *Fulton v. Texas Farm Bureau Ins. Co.*, 773 S.W.2d at 392-93. In other words, the respective courts read the phrase "in, upon, getting in, on, out or off" as requiring not necessarily some physical contact with the vehicle but rather a causal relationship between the vehicle and the injuries. *Id.* And, in assessing the existence of this relationship, the courts considered such indicia as the physical proximity between the injured person and the vehicle, *McKiddy v. Trinity Lloyd's Ins. Co.*, *supra*, the amount of time during which the injured person was outside the vehicle, *id.*, the purpose for being and his actions while outside the vehicle, *id.*, *Fulton v. Texas Farm Bureau Ins. Co.*, *supra*, and whether an impact with the covered vehicle caused the injuries. *McKiddy v. Trinity Lloyd's Ins. Co.*, *supra*.

While one could question whether physical contact with the covered vehicle is actually necessary when the potential insured suffers injury at the hands of the uninsured or underinsured driver, the indicia cited in *McKiddy* and the others compel that more is needed than the mere presence of a covered vehicle. In essence, getting in, getting on, getting off and getting out connote not only action *immediately* directed towards entering or exiting the auto but also an ongoing yet incomplete process. For instance, there is a difference between getting out of a car (a process that has begun but has yet to be completed) and being out of a car (a completed process). According to the policy the former is covered under the definition of "occupying," but the latter is not.

Next, where one lies in the continuum of an ongoing process versus a completed act depends on the interaction of such factors as those addressed in *McKiddy*, *Schulz*, and *Fulton*. Taken together, those opinions direct us to focus upon whether there was a conjunction between time, place, act, and purpose. As illustrated in *Fulton*, merely walking in a parking lot after exiting from a car to search for witnesses to an auto accident failed to evince the requisite conjunction. Simply put, the circumstances showed a completed process. That is, Fulton was no longer "getting" out or off of the vehicle when hit for 1) some time had passed (though it may have been brief) from the moment he relinquished contact with the car, 2) he was some distance from the car (though he and the car may have been in general proximity to each other), 3) he was walking across the parking lot, and 4) his purpose was not directed towards getting in or out of the car. Thus, there was no conjunction between time, place, act and purpose immediately directed towards entering or leaving the insured vehicle. The process implicit in the definition of "occupying"

had been completed by Fulton, and the immediate interplay between the indicia alluded to in *McKiddy*, *Schulz*, and *Fulton* was non-existent.

Here, the evidence of record simply indicates that William was outside the parked truck performing his employment duties in the emergency lane of Interstate 75 when he was struck from behind by the cab. There is no evidence suggesting that he just left the confines of the vehicle or that he was outside it for only a very brief period when the incident occurred, that he was returning to the vehicle at the time, that his purpose for the vehicle was anything other than having it as a potential means of conveyance if and when he chose to depart, that the vehicle was being used in any way incremental to the particular duties being performed (as opposed to it simply being parked on the interstate), or that he was touching or attempting to touch or otherwise immediately adjacent to it at the time. Again, the record merely discloses that the truck was simply present as William and his co-worker, who were standing on the tarmac performing their jobs, were hit. Given this, we conclude that there is no evidence of a nexus (or conjunction of time, place, purpose, and act) between the truck and William's injuries to satisfy relationship contemplated in *McKiddy*, *Fulton*, and *Schulz*. Thus, and as a matter of law, he was neither "occupying" the truck nor an insured under the policy when the cab hit him.

Our disposition of the third issue relieves us from having to address the others asserted by the Company. Accordingly, we reverse the judgment of the trial court and render judgment decreeing that Pearson take nothing from the Company.

Brian Quinn
Justice