**Edward Lee McDONALD and Bobby J. Robinson, Appellants,**

v.

**SOUTHERN COUNTY MUTUAL INSURANCE COMPANY, Appellee.**

No. 01–03–00646–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 24, 2004.

Charles L. Levy, Waco, Craig Muessig, Law Office of Craig Muessig, Baytown, Marc G. Rosenthal, Austin, for Appellant.

Jack McKinley, Robert L. Ramey, Ramey, Chandler, McKinney & Zito, P.C., Houston, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

JANE BLAND, Justice.

In an insurance coverage bench trial arising from an auto-pedestrian accident, the trial court rendered a judgment in favor of appellee, Southern County Mutual Insurance Co. (Southern County), denying coverage. We hold that (1) appellants, Edward Lee McDonald and Bobby J. Robinson, were not "occupying" a motor vehicle at the time of their injuries and therefore did not qualify as insureds under the insurance policy at issue; and (2) the accident did not arise out of the maintenance or use of a motor vehicle. We therefore affirm.

### The Facts

In August 2001, at about 9:30 p.m., McDonald drove a tractor, owned by Robert Cooper. The tractor pulled a trailer, owned by All Points Holdings ("All Points"), a trucking company. McDonald drove the tractor-trailer rig under All Points's authority. Robinson accompanied McDonald as a driver's helper. While traveling westbound on Interstate 10, approaching Katy, Texas, the tractor's right front tire blew out. McDonald pulled over and parked the rig in the grass on the side of I-10, between I-10 and the service road. McDonald and Robinson tried to telephone for help, but their cellular telephone did not work.

The two men walked away from the rig, and planned to walk until they reached a place where they could seek assistance for repairing the flat tire. The men crossed the I-10 westbound service road and proceeded westward along the north side of the service road, in the direction of, and with their backs to, the traffic. Intending to return to the vehicle later that evening, they left their personal belongings in the tractor, including clothing, a briefcase, a log book, and a notebook.

About five minutes after beginning their journey along the feeder road, driver Francisco Rangel struck the two men from behind. The impact caused injuries to both men, although the record does not contain the details of their injuries. Both men were unsure of the precise distance they had traveled before the impact. Robinson testified they had walked "a few minutes," but did not know how much distance they had covered. McDonald testified they had walked "about five minutes or less," for "maybe 50 feet or better."

Rangel carried the minimum limits of liability insurance coverage on his car—$20,000 per person and $40,000 per accident. Southern County had issued a Texas Truckers Policy to All Points that includes uninsured/underinsured motorist ("UIM") coverage for the tractor. McDonald and Robinson filed a claim for underinsured motorist coverage against the Southern County policy, alleging that Rangel negligently caused their injuries, and that they had exhausted the minimum limits under Rangel's liability policy.

Southern County's UIM policy extends coverage to:

> damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured, or property damage caused by an accident.

Part C of the policy defines an "insured" to include, in addition to the named insured, designated beneficiaries, family members, and "any other person *occupying* a covered auto." The parties agree that neither McDonald nor Robinson is a named insured, a family member, or a "designated person" under the policy.

They further agree that the tractor and trailer are "covered autos." McDonald and Robinson claim that they both qualify as "[a]ny other person occupying a covered auto." The policy defines "occupying" as "in, upon, getting in, on, out or off."

### The Procedural History

Southern County sued for a declaratory judgment denying coverage for McDonald's and Robinson's claims. McDonald and Robinson counterclaimed against Southern County for uninsured motorist coverage for their injuries. The trial court realigned the parties for trial. The parties agreed to try the insurance coverage portion of the suit to the court in a bench trial first, and later try the bodily injury claims to a jury, if necessary.

After hearing the evidence, the trial court rendered a judgment that denied insurance coverage and ordered that McDonald and Robinson take nothing on their UIM claims. In a separate instrument, the trial court entered findings of fact and conclusions of law. Pertinent to our analysis here, the trial court found:

4. While westbound on Interstate 10 approaching Katy, Texas, the right front tire of the tractor blew out.

5. McDonald then stopped the tractor-trailer rig and parked it on the side of Interstate 10, between the freeway and the service road.

6. McDonald and Robinson did not attempt to repair or replace the blown-out tire themselves, but tried to call All Points for assistance using a cell phone, which did not operate.

7. McDonald and Robinson then crossed the Interstate 10 westbound service road and began to walk along the north side of the Interstate 10 service road (in the direction of traffic, on the side of the service road opposite the freeway) in

search of a location where they could obtain or call for assistance to replace or repair the flat tire.

8. While walking alongside the service road, in the direction of and with their backs to traffic, McDonald and Robinson were struck from behind by a vehicle driven by Francisco Javier Rangel, and were injured.

\* \* \*

14. For McDonald or Robinson to be an "insured" within the scope of UIM coverage, he had to be "occupying" the tractor or trailer at the time he suffered a "bodily injury," according to the definition of "insured" in part C. ("Who Is An Insured") of the TE 04 09D endorsement:

You and any **designated person** and any **family member** of either.

Any other person **occupying** a **covered auto.**

15. Neither McDonald nor Robinson is a "designated person" in the policy that Southern County issued to All Points.

16. The TE 04 09D endorsement defines "occupying," stating that it "means in, upon, getting in, on, out or off."

17. McDonald and Robinson were not occupying the tractor or trailer at the time they were struck by the underinsured motorist on the side of the freeway service road.

18. McDonald's and Robinson's injuries did not arise out of use of the tractor or trailer. Their driving "use" had ceased. The blowout of the tractor tire and resulting need for maintenance was a condition precedent to them being hit by Rangel's car while walking to obtain help, but their walk was not itself "main-

tenance" of the vehicle and their ensuing auto-pedestrian accident was not a consequence of maintenance.

Pertinent to this appeal, the trial court concluded:

1. McDonald and Robinson were not occupying the tractor or trailer at the time they were struck by the underinsured motorist on the side of the freeway service road.

2. Because neither McDonald nor Robinson was occupying the tractor or trailer at the time he suffered "bodily injury," neither qualifies as an "insured" as defined in the UM/UIM endorsement, and neither has UIM insurance under Southern County's policy.

3. McDonald's and Robinson's injuries did not arise out of the use of the tractor or trailer.

4. McDonald's and Robinson's driving "use" of the tractor had ceased at the time of the auto-pedestrian accident that injured them.

5. The blowout of the tractor tire and resulting need for maintenance was a condition precedent to McDonald and Robinson being hit by Rangel's car while walking to obtain help, but their walk was not itself "maintenance" of the vehicle.

6. McDonald's and Robinson's auto-pedestrian accident, while en route to a location where they could obtain assistance in repairing or replacing the tractor tire, does not have the causal relationship to maintenance of the tractor required by the phrase "arising out of."

7. Supposing McDonald's and Robinson's injuries arose out of maintenance of the tractor, that would not create UIM coverage for them because the policy's "arising out of"

requirement is part of the policy's grant of liability coverage—not UIM coverage.

8. Even if the "arising out of" requirement in the policy's grant of liability coverage were also part of the UIM grant of coverage, McDonald and Robinson would still have to qualify as "insureds" under the UIM endorsement's definition before that standard applied to them, and they cannot do so because they were not "occupying" an insured auto when they suffered "bodily injury."

On appeal, McDonald and Robinson contend that (1) Robinson and McDonald were covered under the Southern County policy at the time of the accident as they were "occupying" the tractor when the underinsured motorist hit them; or (2) alternatively, Robinson and McDonald are insureds under state law, as they were within a reasonable geographic proximity to the tractor, and engaged in an activity necessarily related to the use or maintenance of the tractor.

## The Standard of Review

In an appeal from a bench trial, a trial court's findings of fact have the same weight as a jury's verdict. *Amador v. Berrospe*, 961 S.W.2d 205, 207 (Tex.App.-Houston [1st Dist.] 1996, writ denied). We review the legal and factual sufficiency of the evidence by the same standards applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). If a party attacks the legal sufficiency of an adverse finding on an issue as to which he bears the burden of proof, then he must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). In re-

viewing such a "matter of law" challenge, we examine the record for evidence that supports the challenged finding, ignoring evidence to the contrary. *Id.* If no evidence exists to support the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

In reviewing a factual-sufficiency point, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Southwestern Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

We review de novo a trial court's conclusions of law, and uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *In re Moers,* 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.). An appellant may not challenge a trial court's conclusions of law for lack of factual sufficiency, but we review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium,* 83 S.W.3d at 794.

### The Rules of Construction

We construe insurance policies in Texas according to the rules governing contract construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003). If policy language has a certain or definite legal meaning or interpretation, then it is not ambiguous and we construe it as a matter of law. *Id.* Whether a contract is ambiguous is a question of law. *Id.* An ambiguity does not arise merely because the parties offer conflicting interpretations of the policy language. *Id.* Rather, an ambiguity exists only if the contract is susceptible to two or more reasonable interpretations. *Id.* If language in an insurance contract is ambiguous or inconsistent, and susceptible to more than one reasonable interpretation, a court resolves the uncertainty by adopting a construction that favors the insured. *National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). We thus construe an insurance policy strictly against the insurer and in favor of coverage. *Barnett v. Aetna Life Ins.,* 723 S.W.2d 663, 666 (Tex.1987).

### The Term "Occupying" in the Uninsured Motorist Policy

McDonald and Robinson contend that the evidence conclusively establishes that they were "occupying" a motor vehicle at the time of their injuries, so as to qualify as insureds under the Southern County uninsured policy. The uninsured policy defines "occupying" as: "in, upon, getting in, on, out or off." Texas cases have construed the term "occupying" under various insurance policy provisions. As set forth below, the courts of appeals in *Fulton* (walking in a parking lot) and *Ferguson* (grabbing the handle of a different car for support) have held, in comparable circumstances to this case, that the claimants were not "occupying" their vehicles at the time of their injuries.

In *Fulton v. Texas Farm Bureau Ins. Co.,* the Dallas Court of Appeals held that a claimant was not "occupying" an insured car and therefore was not covered under the policy, when he walked away from a vehicle, across a parking lot, to seek police

assistance. 773 S.W.2d 391, 392 (Tex. App.-Dallas 1989, writ denied) (affirming summary judgment for insurance carrier). Fulton was a passenger in a car whose driver had argued with a driver of another car. *Id.* Both drivers pulled into a liquor store parking lot and continued arguing. *Id.* The driver of the other car rammed her car into the car Fulton occupied and drove away. *Id.* Fulton got out of the car to call the police. *Id.* As Fulton walked through the parking lot, the driver of the other car drove back into the lot and struck Fulton with her car. *Id.* Fulton sought to recover uninsured motorist compensation and personal injury protection, asserting that he had been occupying the insured car. *Id.* The policy defined the term "occupying" as "in, upon, getting in, on, out or off"—a definition identical to the one in this case. *Id.* The court of appeals held that Fulton was not occupying the car:

> By no stretch of the imagination could Fulton be said to have been "in, upon, getting in, on, out or off" of Bartek's car. Fulton was *walking about freely* in the parking lot at the time he was struck by the alleged "uninsured" car.

*Id.* (emphasis added). The facts in this case are analogous to the facts in *Fulton.* Like the claimant in Fulton, McDonald and Robinson too were "walking about freely" down the service road to seek assistance. *See id.*

In *Ferguson v. Aetna Cas. & Sur. Co.,* the Waco Court of Civil Appeals construed the term "occupying" in the context of a medical payments provision that provides medical payments for a named insured who sustains "bodily injury, caused by accident, while occupying or through being struck by an automobile." 369 S.W.2d 844, 845 (Tex.Civ.App.-Waco 1963, writ ref'd) (affirming summary judgment for insurance carrier). The policy defined the term

"occupying" to be "in or upon or entering into or alighting from an automobile," a definition different from the provision in this case. *Id.* In *Ferguson,* a woman left a beauty shop and walked on a board leading into the parking area, toward her car. *Id.* She slipped, grabbed the handle of a different car for support, fell off the board, and broke both legs. *Id.* The Waco court denied recovery, holding that she was not "occupying" the car:

> We think the language employed in the coverage of the insurance policies reasonably plain and unambiguous; and to say that plaintiff was "in or upon" the automobile she had her hand on would be placing a distorted meaning, and unreasonably strained construction upon the described coverage. If plaintiff had been entering or alighting from the car she had her hand upon, at the time of her injury, a different situation would be presented. We cannot say she was "in or upon" the car simply because she put her hand upon it to steady her walk around it on the way to her own car from the beauty parlor.

*Id.* at 845–46.

Moreover, this year, two courts of appeals have addressed the definition of "occupying" in the insurance coverage context. *See The Insurance Co. of the State of Pennsylvania v. Pearson,* No. 07–03–0340–CV, 2004 WL 2053285 (Tex.App.-Amarillo Sept.07, 2004, no pet.) (mem.op.); *McKiddy v. Trinity Lloyd's Ins. Co.,* No. 05–03–00908–CV, 2004 WL 639639 (Tex. App.-Dallas April 01, 2004, pet. denied) (mem.op.).

In *Pearson,* the Amarillo Court of Appeals reversed a summary judgment in favor of a claimant and held that Pearson did not qualify as an "insured" under the policy because he was not "occupying" the vehicle. *Pearson,* 2004 WL 2053285, at *1. Pearson, who worked for an electric com-

pany, parked the company truck in an emergency lane on Interstate 75. *Id.* While performing his employment duties outside the parked truck, a taxi struck him from behind and killed him. *Id.* The court concluded that there was no evidence of a nexus between the truck and Pearson's injuries:

> In essence, getting in, getting on, getting off and getting out connote not only action immediately directed towards entering or exiting the auto but also an ongoing yet incomplete process. For instance, there is a difference between getting out of a car (a process that has begun but has yet to be completed) and being out of a car (a completed process). According to the policy the former is covered under the definition of "occupying," but the latter is not.

*Id.* at *3.

In *McKiddy*, the Dallas Court of Appeals upheld a summary judgment in favor of the insurance company, holding that McKiddy did not qualify as an "insured" under the policy because he was not "occupying" the vehicle. *McKiddy*, 2004 WL 639639, at *1. McKiddy was a passenger in a car that skidded off an icy road. *Id.* After exiting the car, McKiddy was struck by another car that skidded off the road. *Id.* McKiddy sought coverage under the underinsured motorist policy covering the car in which he had been a passenger. *Id.* McKiddy testified that he was "no more than ten feet" from the covered vehicle. *Id.* at *2. In assessing the existence of a causal relationship between the vehicle and

the injuries, the court considered such indicia as the physical proximity between the injured person and the vehicle, the amount of time during which the injured person was outside the vehicle, and whether an impact with the covered vehicle caused the injuries. *Id.* The court held that McKiddy produced no evidence showing how long he had been out of the covered vehicle before being struck, and no evidence showing that his injuries related to an impact with the covered vehicle. *Id.* Accordingly, the court held that McKiddy failed to raise a fact issue as to whether "a causal connection" between his injuries and the covered vehicle existed. *Id.* Furthermore, the court held that the contract term—"occupying"—is not ambiguous as a matter of law. *Id.* at *3.[1]

In each of these cases, the courts of appeals have affirmed the denial of coverage, based on holdings that "occupying" requires a causative nexus with the vehicle, and the claimants in these cases lacked such a nexus. Here, the trial court similarly found that the accident lacked a causative nexus with the vehicle covered by the insurance policy—i.e., once Robinson and McDonald began their foot journey, they ceased to be vehicle-oriented. The evidence in the record supports the trial court's findings: the men had crossed the road, and were proceeding away from the vehicle on the other side, with an intent to return to it later, rather than immediately. We thus defer to the trial court as fact finder and hold that legally and factually sufficient evidence supports the trial

---

1. *See also Schulz v. State Farm Mut. Auto. Ins. Co.*, 930 S.W.2d 872, 876 (Tex.App.-Houston [1st Dist.] 1996, no writ) (affirming summary judgment in favor of insurance company). In *Schulz*, a case construing an auto death indemnity provision, the driver's estate argued that the driver had been "occupying" the vehicle, even though he was shot outside the vehicle, because he was in "relatively close proximity to the vehicle for purposes related to the vehicle and because his exit from the vehicle was not voluntary, but rather a result of force." *Id.* The driver's estate offered no evidence to support a causal relationship between the vehicle and the driver's death; therefore, we held that the driver was not "occupying" the vehicle at time he was shot. *Id.*

court's conclusion that the men were not "occupying" the vehicle under the policy.

### "Getting In" or "Getting In, Getting On, Getting Out or Getting Off"

McDonald and Robinson also assert that the trial court improperly ignored the placement of the word "getting" in the defining phrase and ignored the lack of commas following the word "getting." They contend that the word "getting" modifies only the word "in," and not "on, out or off." They rely on *Pennington v. Ohio Casualty Insurance Company*, in which the Ohio Court of Appeals construed an identical definition of the term "occupying." 63 Ohio App.3d 527, 579 N.E.2d 507, 509 (1989) (reversing summary judgment and remanding). Pennington died as a result of injuries sustained while waiting in a drive-through line at a Taco Bell. *Id.* at 508. A man from another car in front of the line attacked Pennington's car, stabbed the roof with a knife, and smashed the window. *Id.* Pennington exited the car to attempt to reach a place of safety. *Id.*

Pennington's injuries would have been covered under the policy if he "was occupying a motor vehicle" at the time of the accident. *Id.* at 509. The court held that the word "getting" modifies only the word "in," not the phrase "on, out or off":

> If this definition is taken literally, "occupying" means anywhere "out" or "off" the vehicle, as the word "getting" does not modify either of these two words, but only the word "in." There is no conjunction before "getting in" as there would be required for the word "getting" to modify "out," "on," and "off" as well as "in." Accordingly, a person "out," or "off" of the vehicle need not be "getting" in or "getting" out or "getting" off, but is within the policy definition of "occupying" when he is "out" or "off" of the vehicle so long as there is a reason-

able relationship to the vehicle at the time. The relationship here would be leaving the vehicle.

*Id.* at 509. The court thus concluded that "the process of leaving a vehicle continues at least until the departing passenger has reached a place of safety," and that the evidence presented raised a fact issue precluding summary judgment. *Id.* at 510–11.

We note that Texas courts do not agree with the Ohio Court's interpretation of "getting" in interpreting the Texas UIM policy. *See Pearson*, 2004 WL 2053285, at *3; *McKiddy*, 2004 WL 639639, at *2. More importantly, *Pennington* is distinguishable from the present case because it was an appeal from a summary judgment. Here, however, the trial court rendered judgment after trial on the merits, and we defer to the trial court's findings of fact. The trial court in this case found that McDonald and Robinson were not "occupying" the vehicle. The trial court thus implicitly found that the claimants were beyond a reasonable proximity to the vehicle, and the record contains evidence to support that finding. Robinson testified that they walked from the shoulder of the freeway, across the "feeder road," over to the grass, to the opposite side of the feeder road. Although they were unsure of the exact distance, Robinson testified they had walked "a few minutes," and McDonald testified they had walked "about five minutes or less," for "maybe 50 feet or better." We hold that the evidence supports the trial court's finding that McDonald and Robinson were not "occupying" the vehicle at the time of their injuries under either reading of "getting" in the definition of "occupying." Based on the trial court's findings of fact, the trial court properly denied coverage in this case.

■ Relying on additional cases from other jurisdictions, McDonald and Robin-

son also suggest that we construe the term "occupying" to include an analysis of whether the claimant has a "reasonable relationship" with the vehicle. They rely on *Macchi v. Connecticut Gen'l Ins. Co.*, in which the New Jersey Superior Court Appellate Division held that a motorist, injured after she left her car to help an overturned vehicle, was "occupying" her car for purposes of the UM/UIM endorsement. 354 N.J.Super. 64, 804 A.2d 596, 600 (2002). In *Macchi*, the claimant stepped out of her Corvette on the side of the road, left the engine running, the lights on, her purse in the car, and told her son to call the police. *Id.* at 598. The court found that the claimant was "occupying" the vehicle; therefore, she was entitled to coverage. *Id.; see also General Acc. Ins. Co. v. Olivier*, 574 A.2d 1240 (R.I.1990) (holding that claimant, who was shot 117 feet away while waiting to speak to police, was "occupying" vehicle); *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984) (holding that driver, who was injured while walking 97 feet from vehicle to retrieve items in response police officer's request, was "occupying" vehicle). McDonald and Robinson contend that Texas law should follow these jurisdictions, and that we should determine that "occupying" ceases only when the vehicle occupant reaches a place of safety.

We observe that, in the context of a different insurance provision, the Texas Supreme Court recently held that an injury that occurred when a claimant's foot became entangled with his truck's door, while he exited the truck, was a "motor vehicle accident," thereby entitling him to personal injury protection (PIP) coverage. *Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 128–30 (Tex. 2004). In footnotes eleven and twelve, the *Sturrock* court collected cases from across the nation, in which courts found coverage for accidents occurring within a reasonable

proximity to the vehicle, and denied coverage for accidents occurring beyond a reasonable proximity to the vehicle. *See id.* at *4 n. 11, 12, at 128–30 (listing cases and fact patterns). Among those favorably cited with a fact pattern similar to the present case is *Rednour v. Hastings Mutual Insurance Company*, 468 Mich. 241, 661 N.W.2d 562 (2003) (reversing summary judgment). In *Rednour*, the claimant was approximately six inches away from his car and was walking toward the rear of his car to change a flat tire when he was struck by another car. *Id.* at 244, 661 N.W.2d at 564. The Supreme Court of Michigan held that the claimant was not occupying his vehicle and thus was not entitled to PIP coverage. *Id.* at 251, 661 N.W.2d at 568.

In *Sturrock*, the Texas Supreme Court observed that these cases often turn on whether the vehicle was a causative factor in the injury. *Sturrock*, 146 S.W.3d at 128–30. Texas precedent has not imposed an additional "place of safety" requirement beyond the traditional causation analysis. Here, the trial court found that the vehicle was not a causative factor in McDonald and Robinson's injuries. We decline to read "occupying" so broadly as to confer coverage, as a matter of law, any time an occupant who has exited the vehicle has not reached a "place of safety."

### "While Occupying" vs. "Occupying"

■ The claimants further contend that the absence of the word "while" immediately before the word "occupying" requires the court to give a broader meaning to "occupying." Throughout the policy, Southern County uses the phrase "while occupying." For example, the exclusion section provides:

We do not provide Uninsured/ Underinsured Motorists Insurance for any person:

a. For bodily injury sustained *while occupying,* or when struck by any motor vehicle . . . which is not insured for coverage under this policy.

The claimants assert that failing to give the term "occupying" a broader meaning than "while occupying" makes the term "while" "mere surplusage." A dictionary defines "occupy" as "to fill up (space or time)." WEBSTER'S II NEW COLLEGE DICTIONARY (1995 ed.).

The parties concede that no Texas case has considered "while" in this context. As Southern County points out, " 'while' primarily serves the English language as a conjunction, connecting clauses or phrases in a sentence," and thus is not necessary in connection with defining a term. We agree with Southern County that the omission of "while" does not inform as to the meaning of "occupying."

### "Arising Out of the Maintenance or Use" of the Vehicle and Public Policy

 The Southern County policy outlines the scope of coverage as follows:

We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured or property damage causes [sic] by an accident. The owner's or operator's liability for these damages must *arise out of the* ownership, *maintenance or use* of the *uninsured* motor vehicle.

It is undisputed that Rangel, the *uninsured* motorist, was using his vehicle when he drove down I–10 and struck the claimants; thus, the damages arose out of the use of the *uninsured's* (Rangel) motor vehicle. The Southern County policy does not address the extent to which UIM coverage exists for damages arising out of the maintenance or use of the *insured's* vehi-

cle. McDonald and Robinson contend, however, that their damages arose out of the use of the *insured's* (McDonald's and Robinson's) motor vehicle.

Article 5.06–1 of the Texas Insurance Code provides a basis for coverage arising out of the maintenance or use of "any" motor vehicle, not just the maintenance or use of the uninsured vehicle:

No automobile liability insurance . . . covering liability *arising out of the* ownership, *maintenance, or use* of *any* motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in at least the limits described in the Texas Motor Vehicle Safety–Responsibility Act, under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom.

TEX. INS.CODE ANN. Art. 5.06–1(1) (Vernon Supp.2004–2005) (emphasis added).

It is unclear from McDonald's and Robinson's brief whether they seek a holding that broadens the language of the UIM policy to comport with the statute—and essentially places "occupiers" in the same position as that of first-party insureds—or one that defines the term "occupying" to include maintenance of the vehicle. Under either proposed construction, however, the evidence supports the trial court's finding that the injuries did not "arise out of" the use or maintenance of the tractor or trailer. The trial court found as follows:

McDonald's and Robinson's injuries did not arise out of the use of the tractor or trailer. Their driving "use" had ceased. The blowout of the tractor tire and re-

sulting need for maintenance was a condition precedent to them being hit by Rangel's car while walking to obtain help, but their walk was not itself "maintenance" of the vehicle and their ensuing auto-pedestrian accident was not a consequence of maintenance.

McDonald and Robinson contend that trial court's findings are incorrect because, under the Federal Motor Carrier Regulations Act, they remained on duty during the time they sought assistance. *See* 49 C.F.R. § 395.2(6) ("On duty time shall include ... All time repairing, obtaining assistance, or remaining in attendance upon a disabled commercial motor vehicle."). They left their personal belongings in the tractor, including clothing, a briefcase, log book, and notebook, and intended to return to their rig later that evening after obtaining assistance. The tractor contained "sleepers," if they needed to sleep in the rig that night.

Assuming that Article 5.06–1(1) requires the broad assessment of the policy language that they suggest, McDonald and Robinson factually do not prevail here, because the evidence supports the trial court's findings that their auto-pedestrian accident did not arise out of the maintenance or use of the vehicle. McDonald and Robinson were not in the process of changing the flat tire. Instead, they had parked the tractor on the side of the highway and had walked across the service road in the grass "about five minutes or less," for "maybe 50 feet or better." Accordingly, the evidence supports the trial

court's finding that the claimants' foot journey was not "maintenance" of the rig.

The claimants note that other jurisdictions favor a broad construction of "arising out of" to encompass persons who are walking or standing a considerable distance from their vehicle.[2] McDonald and Robinson do not prevail, however, under Texas precedent. In *Mid–Century Ins. Co. v. Lindsey*, the Texas Supreme Court held:

> For liability to "arise out of" the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle. The use required is of the vehicle qua vehicle, rather than simply as an article of property. Whether a person is using a vehicle as a vehicle depends not only on his conduct but on his intent.

997 S.W.2d 153, 156 (Tex.1999) (citations omitted). The *Lindsey* court outlined the following test to determine whether an injury "arises out of the use" of a motor vehicle for purposes of auto liability insurance coverage:

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the

---

**2.** *See Pennington*, 579 N.E.2d at 509 (requiring reasonable relationship to vehicle at time of accident); *Genthner v. Progressive Casualty Ins. Co.*, 681 A.2d 479, 482 (Maine 1996) (holding that passenger was "occupying" insured vehicle for purposes of UM coverage for injuries sustained immediately after insured vehicle was rear-ended by another vehicle when he exited vehicle in attempt to assist driver in obtaining second vehicle's license number and was struck by second vehicle as it sped away); *Adkins v. Liberty Mutual Fire Ins. Co.*, 201 W.Va. 148, 494 S.E.2d 915 (1997) (holding that policy requirement that highway construction worker "occupy" vehicle for UIM was void because coverage only for individuals "occupying" covered vehicle was more restrictive than statutory requirement of coverage for persons "using" vehicle).

condition which produces the injury, but must itself produce the injury. *Id.* at 157. McDonald and Robinson do not meet these three factors. First, the accident arose out of the inherent nature of their pedestrian journey, not from their interaction with the tractor. Second, they terminated the tractor's "actual use" when they drove into the grass, parked the tractor, turned the engine off, and walked beyond the "natural territorial limits" of the tractor. Third, the tractor did not "itself produce the injury." Instead, the tractor's flat tire merely contributed to the condition, or the walk down the highway, that produced the injury. Under these factors, McDonald's and Robinson's injuries do not arise out of the use or maintenance of the tractor. *See id.*

Finally, Robinson contends that public policy demands a liberal interpretation of the UIM statute. The purpose of PIP and UIM coverage is to protect conscientious drivers from irresponsible parties, and courts liberally construe the PIP and UIM statutes. *See Sturrock,* 146 S.W.3d 123, 127–28; *Stracener v. United Serv. Auto. Ass'n,* 777 S.W.2d 378, 382 (Tex.1989) (stating that UIM article should be liberally construed).

We agree, but even if we assume a broad interpretation of the UIM policy for public policy reasons, as we have, the evidence nonetheless supports the trial court's findings that McDonald and Robinson's injuries did not arise out of the use or maintenance of the tractor or trailer under the standards set forth by the Texas Supreme Court.

### Conclusion

We hold that the evidence supports the trial court's findings that (1) McDonald and Robinson were not occupying the tractor or trailer at the time the underinsured motorist hit them, and (2) their injuries did not arise out of the use or maintenance of the tractor or trailer. Based upon these findings, the trial court properly declared that no coverage exists under the UIM policy, and properly rendered a take nothing judgment on the claims against the policy. We therefore affirm the judgment of the trial court.